**Robert SHAW, Respondent,**

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.**

No. 48373.

Supreme Court of Missouri, Division No. 2.

March 13, 1961.

Robert C. Ely, St. Louis, for appellant.

Michael B. Gershenson, St. Louis, for respondent.

EAGER, Judge.

Plaintiff recovered a judgment of $20,000 in this suit for personal injuries. An appeal was taken by defendant in due course. No point is made here on the sufficiency of the evidence for submission to the jury. We shall not digest the pleadings, as no point made here concerns them.

Defendant, in the operation of its railroad and for the convenience of shippers and receivers of heavy materials, owned and maintained a "gantry crane" in its yards at Compton and Spruce Avenues in St. Louis. This device consisted of a steel superstructure which spanned two switch tracks and the adjacent driveways on each side of those tracks. Underneath the horizontal beams of the structure there was a trolley; to this a lift mechanism was attached. A hook was suspended from the lift mechanism and this could be raised and lowered. All movements were operated by electric power, and indeed the whole crane could be moved back and forth on its own short track. The control center was located in a box fixed at or near one corner of the crane; this box contained buttons which, when pressed, would move the trolley east or west across the switch tracks, lower or raise the lift, or move the whole crane along its tracks. When the crane was needed by a trucking company, its employees obtained the key from defendant's yard clerk; the operation was handled entirely by the employees of the trucker involved in unloading the shipment.

Liability here is predicated upon a supposedly defective condition of the crane

and the fact that defendant knew or should have known of it. Specifically, the control box and certain of its operating parts were claimed to be defective. Plaintiff was an employee of P. J. Hamil Transfer Company, which had for some years hauled heavy pipes from this location, using the crane. Plaintiff had been employed by Hamil since 1952 as a truck driver; his injury occurred on March 28, 1957. He had worked around this crane perhaps a dozen times. On the occasion in question he was there with four other Hamil employees, Jack Taylor, John Wallace, Woody Good and John Simms. Taylor and plaintiff were in the railroad gondola car (often referred to as a coal car), Wallace was on the ground operating the controls, and Good, who had come there late, was standing on the ground by the car, as was Simms also. The car, with sides 4–5 feet high, contained one pile of pipe in the north half and one in the south half. The pipe was 21–22 feet long. Plaintiff's truck had been lined up, north and south, beside the loaded car; four or five lifts of pipe had been transferred to the truck and a different truck had been placed for loading. Each lift consisted of a bundle of pipes perhaps one and one-half to two feet in diameter. The mode of operation was to lower the hook from the crane and center it over the pipe to be loaded, whereupon Taylor and plaintiff (or others, if involved) would place a cable under each end of the next load or "lift," and attach both ends of each cable to the hook. At a signal from Taylor, the load would then be lifted just enough to take up the slack in the cables and to raise the load a foot or less off the floor of the car. The men in the car would then check the balancing of the load and, if all was well, signal for it to be raised and moved over to the truck. Thereupon plaintiff would climb out of the car and assist in guiding the load into the truck.

On this particular occasion there was evidence that the lift of pipe in question came up suddenly and jerkily, and that it swung over and struck plaintiff who had been standing at the side of the car 4–6 feet from the pipe, talking to Good. It knocked him against the side of the car with a lifting movement, causing rather severe cartilaginous damage to his left knee, as well as various and sundry bruises. The essential claim of plaintiff was and is that the "up" button in the control box stuck when it was pressed in, letting the load of pipe proceed upward in a jerking, swinging movement until Wallace pulled the master switch located on a nearby pole; and that Wallace was thus unable to control the movements in a normal manner. There was evidence, generally, concerning the crane and its motivating parts, as follows: that the control box was weathered and rusty; that the buttons were worn and their markings not identifiable; that on prior occasions a button had sometimes stuck, and that this would cause the mechanism to continue that particular movement at maximum speed; that sometimes this could be corrected by beating on the box, at other times not; that the buttons only stuck when pushed all the way in for maximum speed; one witness recalled an incident when "the buttons were sticking" about two months before plaintiff's injury; some occasional difficulty was also indicated with the brakes on the crane, permitting a movement to continue temporarily; that a load would jerk when the button stuck; that sometimes the pipe would swing when the crane was operating properly; that unequally fixed cables or an improperly centered lift might cause the load to swing if it was moved fast; that the crane had operated without difficulty on the dozen or so occasions when plaintiff had taken part in the work; that over the years defendant had made sundry repairs and replacements on the crane, including work in 1956–1957; the records did not show the nature of that work, but there was testimony that on occasions defendant's electrician had been summoned, and that after plaintiff's injury he came and released the load by climbing up on the crane and turning a wheel. Different

employees had operated the controls from time to time.

With specific reference to the time of plaintiff's injury, Taylor testified: that when he saw the load come up jerking and swinging he yelled to Wallace to "stop"; that Wallace "said the button stuck"; that he then yelled for Wallace to cut the switch and that was done. The statement of Wallace, though objected to, was admitted as res gestae and no point is made of that now. Plaintiff also testified that he, at the time, heard the statement of Wallace that the "button stuck." Good did not hear it; Simms and Wallace were deceased at the time of the trial. Taylor also testified that he went down and looked at the "up" button after plaintiff's injury, that it was stuck, and that he tried to release it without success. The testimony of Taylor was impeached to a substantial extent by prior statements made and recorded on dictaphone tape; this affected particularly his trial testimony that he had gone down after the injury to look at the box, and that there had been prior difficulties because of the sticking of the buttons. It was shown that defendant had no notice of plaintiff's injury until suit was filed.

In the body of this opinion we shall refer more specifically to certain evidence which was admitted over objections that it was hearsay. We find it unnecessary to outline plaintiff's injuries or treatments. The points made here by defendant essentially are: (1) error in giving plaintiff's Instruction No. 1; (2) error in admitting hearsay testimony; and (3) error in permitting a closing argument to the jury on matters not mentioned in plaintiff's opening argument. We shall discuss these in a different order.

We consider first the admission of testimony. Plaintiff's witness Good had not heard the alleged remark of Wallace at the time of plaintiff's injury; he was permitted to testify, however, that Wallace later told him that the button stuck and caused the accident. Defendant made a timely objec-tion to this testimony on the ground of hearsay. On cross-examination it was shown that this conversation was in the office of plaintiff's attorney. At the conclusion of Good's testimony defendant moved for a mistrial because of the admission of this evidence. Thereafter plaintiff testified on direct examination that he heard Wallace say at the time of his injury that "the button stuck"; on further direct examination he was permitted to testify over specific objections that he later, and after he had gone back to work, heard Wallace say that "the button stuck in the crane and that's how the accident happened at the time." The most specific answer to this effect was brought out by a question from the court, after three objections had been made on the ground of hearsay. Counsel also moved that the answer just quoted be stricken. This was overruled.

■ We need waste no time or space in establishing the fact that hearsay testimony, unless it be within some recognized exception, is inadmissible. The reason is, of course, that testimony offered as affirmative proof of the fact asserted should not come from a witness who is not present and subject to cross-examination. Cottonseed Delinting Corp. v. Roberts Bros., Inc., Mo., 218 S.W.2d 592, 594; Meyers v. Smith, Mo., 300 S.W.2d 474, 478. No theory of admissibility was advanced here when the objections were made, and we fail to understand why the evidence was admitted. The statement supposedly made by Wallace at the time of the injury was received upon the asserted theory of res gestae, a theory to which many of us cling, despite the barbed and perhaps logical criticisms in Meyers v. Smith, supra. No applicable exception occurs to us, even now, to indicate the admissibility of evidence of later statements, and certainly none is advanced by counsel. We deem this testimony to have been wholly incompetent. Moreover, it appears to have been offered rather insistently in the face of the objections and without any attempted differentiation, for the conscious purpose of building up plaintiff's

case; it was most certainly not inadvertent. And the court made matters worse by adding its own pointed question. The fact that Good had not heard the original remark at the time of the injury, and that Taylor (the only one besides plaintiff who did then hear it) had been substantially impeached in some respects by prior statements, makes the admission of this hearsay more vital. It was also emphasized in plaintiff's argument. The matter of the sticking of the button was the one essential factor in the case on the question of liability. Plaintiff's counsel answers these contentions by saying: (1) that the real objection to this testimony is that it constituted conclusions as to the cause of the injury, that no such objection was made, and that defendant's counsel had previously cross-examined witnesses as to the cause of the swinging of the pipe, which amounted to a waiver; (2) that the objections made were merely "epithetical," as for instance "highly prejudicial"; and (3) that, at most, the testimony was merely cumulative and not prejudicial. Only the last of these assertions merits any real discussion. As to (1) and (2), there were specific objections on the ground of hearsay, and the objectionable statements were hearsay in their entirety, even if they also incorporated conclusions. Prior cross-examination of a witness who saw the injury as to the cause of the swinging of the pipe, could not possibly have constituted a waiver of subsequent hearsay. The suggestion of the sticking of the button was already in evidence as res gestae, over objection, and counsel was entitled to cross-examine concerning its effect, if true. The theory that a party who first introduces hearsay evidence (Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859) may not complain of subsequent evidence of like character, has no application whatever here. As to (3), that the evidence was cumulative and its admission discretionary: We have already noted that the supposedly spontaneous remark of Wallace that the button had stuck was in evidence as res gestae; it is also true that Taylor testified

that he had gone down and looked at the box and saw that the button was stuck, but Taylor was therein substantially impeached. This hearsay testimony was not merely cumulative, as would have been evidence from a third witness who had heard Wallace's spontaneous remark at the time of the injury; it constituted an attempt to corroborate Wallace by his own self-serving statements made at a different time and under different circumstances and, being hearsay, its admission may not conceivably be justified on any theory of discretion. The remark was self-serving to the extent that it blamed the faulty movement upon the equipment and not upon any error of the operator. The trial court does have some discretion in the admission and exclusion of purely cumulative evidence. State v. Harris, 334 Mo. 38, 64 S.W.2d 256. The offer of this controverted testimony, and indeed the testimony itself, constituted an attempt to bolster, corroborate, and add to the initial res gestae statement about the button and, since it was based upon the credibility of a witness not present and concerned a most vital matter, it was prejudicial. The admission of this testimony was prejudicial error.

We may dispose of the objections to plaintiff's Instruction No. 1 rather shortly. In essence counsel says that the instruction merely hypothesized, generally, that the "crane had a defective electrical directional button box," which defendant knew or should have known of; and that it wholly omitted all reference to the actual sticking of the button, and the fact that this caused the pipes to jerk and swing and strike plaintiff; that these were contested issues and that, within the doctrine of Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496; Johnson v. Missouri-Kansas-Texas R. R. Co., Mo., 334 S.W.2d 41, and other cited cases, plaintiff wholly failed to hypothesize the essential fact issues necessary in the case. Since the case is being remanded for retrial, we merely suggest that respondent's counsel consider the objections made to this instruction. It certainly could

have been drawn so as to hypothesize more directly the real and essential fact issues. We need not decide whether, under all the circumstances, it constituted prejudicial error.

The last point made concerns the final arguments. In his opening argument plaintiff's counsel discussed in detail the question of liability, the evidence supporting plaintiff's theory of negligence, and the credibility of plaintiff's witnesses. He did not, as such, mention the matter of plaintiff's injuries or the damages claimed; we regard mere references (both by plaintiff and defendant) to the fact that plaintiff was "hit" by the pipe, or to the "time he got hurt" and similar statements as purely incidental discussions of the facts affecting liability. When counsel finished his opening argument, he stated that in concluding his argument later he had "some other points" that he wanted to develop. Thereupon the following occurred: "Mr. Ely: Now, before Mr. Gershenson stops, if the Court please, at this time I would like to serve notice that if Mr. Gershenson expects to raise any new points in his final argument that I would object to them at that time because I will not be given an opportunity to answer them, and I ask that he at this time make all of his points. If he has any damages to argue, or anything else, I would like to have opportunity to answer them. The Court: Overruled." Defendant's counsel did not, as we construe his argument, touch upon the question of damages or injuries so as to waive that point. In the concluding argument plaintiff's counsel spent a considerable part of his time in arguing the matter of injuries and damages; on the first two occasions when the subject was thus mentioned counsel for defendant objected, but was overruled. This argument involved the lost wages, medical expense, permanency of injuries, medication, pain and suffering, and the "crippled" condition of plaintiff's knee; counsel concluded by asking a verdict of $25,000.

We are brought here face to face with the proposition discussed in Goldstein v. Fendelman, Mo., 336 S.W.2d 661, 667, as follows: "We do not go as far as the New Jersey and Pennsylvania cases cited in Faught v. Washam, supra [Mo., 329 S.W.2d 588] holding that plaintiff's counsel may not state in his argument amounts he claims would be fair and reasonable compensation for injuries shown by the evidence to have been sustained. See 88 C.J.S. Trial § 192, p. 377. Nevertheless, while we recognize that the trial court has considerable discretion in the matter of arguments of counsel we consider it unfair and improper to permit plaintiff's counsel to do this for the first time in his closing argument, when defendant's counsel has made no argument as to amount. In Votrain v. Illinois Terminal R. Co., Mo.Sup., 268 S.W.2d 838, 844, we said: 'Generally, the purpose of closing argument by counsel for the party having "the burden of the issues" is to answer the argument of counsel for the other party, the one "holding the negative."' See also 88 C.J.S. Trial § 169, p. 339; Supreme Court Rule 4.22, V.A.M.S. However, in this case, defendant made no objection on that ground and all of his objections made during the closing argument were sustained except his objections to the plaintiff's counsel writing on the large cardboard his claims as to the worth of particular injuries and arguing these amounts to the jury. Because we have found the verdict is not excessive and because of the scope of defendant's objections, we hold there was no prejudicial error in connection with the argument to the jury in this case." In our present case not only was the statement of the amount claimed withheld for the concluding argument, but the entire argument on injuries and damages was so withheld. This was done knowingly, and after full and complete warning. As stated at various times, the legitimate purpose of the closing argument is to answer the argument of the party "holding the negative," usually the defendant. We recognize that there may be

cases where a point has been inadvertently overlooked in the opening and, in the court's discretion, it may be permissible to supply it later; and it seems that the courts have a certain amount of discretion in refusing or permitting a closing argument when the defendant has waived his argument. Friedman v. United Railways Co. of St. Louis, 293 Mo. 235, 238 S.W. 1074. Counsel for defendant places considerable reliance upon our Rule 4.22, V.A.M.R. to the effect that candor and fairness require that one should not mislead his opponent by "concealing or withholding positions" in his opening argument. Taking his cue from this, plaintiff's counsel cites nine instances occurring in the pre-trial or trial procedure which, as he says, show that defendant was not deceived but, on the contrary, knew that injuries and damages would be discussed. We are not dealing here with a question of *notice* to defendant; and we need not decide here whether or not the rule was knowingly violated. See, on the rule, Cumming v. Allied Hotel Corp., Mo.App., 144 S.W.2d 177, which illustrates some permissible latitudes. It is not practicable to lay down a hard and fast rule governing all cases, in all their varying circumstances; we do not attempt to do so here. But we do hold, here and now, that the party having the affirmative of the issues in a suit such as this may not, after full notice and warning, withhold all argument on the vital questions of injuries and damages; we further hold that the trial court abused its discretion in permitting this argument in the reply, and that, under the circumstances of this case, the error was prejudicial. There was no waiver. The issue here is not merely whether the verdict was thus rendered excessive, as plaintiff now contends. No one can say what verdict this jury might have returned if the arguments had proceeded in the regular course, and if defendant's counsel had been permitted to answer the argument on injuries and damages. We hold that this error would necessitate a reversal, independent of other points raised. Counsel

having the affirmative will be held to the requirement of fairly stating his essential points in the opening argument, at least to the extent that the defendant may fairly answer them; and a failure to require this will ordinarily constitute error, if the point has been properly raised at the time and preserved.

Under the circumstances, it would be improper to consider defendant's additional point that the verdict is excessive. For the errors noted herein the judgment is reversed and the cause is remanded for a new trial.

All concur.