Arthur MISCH et al., Plaintiff-Respondent,

v.

C. B. CONTRACTING COMPANY, a corporation, Defendant-Appellant.

No. 8385.

Springfield Court of Appeals.

Missouri.

July 28, 1965.

Rehearing Denied Aug. 18, 1965.

---

4. In our opinion, "probably" well might have been omitted—claimant and his partner were tenants at will.

Donnelly & Donnelly, Lebanon, Kay & Quigley, Eldon, for defendant-appellant.

J. W. Grossenheider, Lebanon, for plaintiff-respondent.

RUARK, Presiding Judge.

This is a suit for damages to plaintiff's property due to use of explosives in laying a city sewer line. The jury blasted defendant with a five-thousand-dollar verdict. It appeals.

According to plaintiff's version of the facts (which we must accept in the most favorable light), the blasting commenced on August 14, 1962, and continued into the fall, at least through September. Since the frequency and intensity of the explosions, and the distance from the premises, is not involved on this appeal, we will not go into it. However, a brief description of the property is necessary to an understanding of the first issue. It consisted of a home, six "tourist cabins," concrete walks and patios, driveways, and a filling station of concrete block construction. The home and cabins were of sandstone veneer. Foundations were concrete, twelve inches thick, set three to four feet deep, reaching to "solid clay." Frames were cured pine. On the outside of the frame were driven many roofing nails; wire was attached, sandstone was set on the outside, and mortar was poured in the space between. "It sticks to the rock." Plaintiff's evidence was that the whole of the property was in good condition prior to the blasting, but that due to such blasting windows, foundations, concrete blocks (in the filling station), and many of the sandstones, were cracked, that the mortar at the seams was caused to "turn around and fall out," and that many of the sandstones were loosened and would, in time, fall out.

Appellant's first contention is that it should have been granted a new trial because there was no substantial evidence to support the verdict, in that the amount of damage was not proved.

At the outset we are confronted with respondent's suggestion that the point should not be considered because the question was not presented to the trial court. The defendant did not present, either orally or in writing, any motion for directed verdict or for judgment. The suggestion first appears in the motion for new trial in the general words, "[T]here was no substantial evidence to support the verdict." Ordinarily we do not consider allegations of error not presented to the trial court. Georg v. Koenig, Mo., 370 S.W.2d 356(3); West's Missouri Digest, Appeal and Error, ⊜ 169; V.A.M.R. Civil Rules 83.13(a), 79.03. The proper way to preserve the question of submissibility is to file a motion for directed verdict at the close of the evidence and again direct the court's attention to the question by proper after-trial motion. Millar v. Berg, Mo., 316 S.W.2d 499, 502; Sides v. Mannino, Mo.App., 347 S.W.2d 391, 394; Duffendack v. St. Louis Public Service Co., Mo.App., 365 S.W.2d 52, 54. The question was not properly raised; but under Supreme Court Rule 79.04 we will, at appellant's urging, examine it in order to see whether it should be considered as plain error affecting substantial rights resulting in manifest injustice.

The damage occurred in the late summer and fall of 1962. The case was tried in May of 1964, approximately twenty months afterwards. Plaintiff testified that the reasonable market value of the property *before* the blasting was $37,500. "Q. Now after the blasting occurred and after the blasting finally stopped, considering your property as it was after, what was the fair market value of your property immediately after

the blasting? A. I have got it up for sale now $30,000." The objection "as not responsive" was sustained. Then, upon defendant's request, the jury was instructed to disregard. When the witness then attempted to volunteer, objection again was made and sustained and the jury was instructed to disregard. Counsel finally returned to his question. "Q. Without telling the jury now what you are trying to sell it for or anything, can you tell the jury just what the fair market value of it is now in the condition it is in? A. Well, I would say $30,000." Note that in the original question counsel used the words "immediately after"; but in the second, and no doubt with some exasperation because of his loquacious witness, he used the word "now." It is this "now" instead of "immediately after" which is the foundation of the contention that there was no substantial evidence of damage.

■ We agree with counsel that, generally, the measure of damages for injuries to real property is the difference in value immediately before and immediately after the injury, and there must be evidence of such.[1] But let us consider the whole evidence: Plaintiff's witness Libby was a contractor and carpenter, and he had had two years' experience with explosives in the army. He was familiar with the buildings since the time they were built and before the blasting in the summer and fall of 1962. He had been on the premises a number of times and had inspected the buildings. He made the inspection because he wanted to know how the rock was laid, for he thought that it was something he "might want to do." After the blasting he inspected the damage and made an estimate of the cost of removing and replacing damaged rock and mortar with a view to restoration, and his estimate of cost "by the yardage" was seventy-five hundred dollars. He was rath-

er indefinite as to the times he was there to inspect. He said it was "after the blasts they are talking about in 1962." "Different times." He was certain that he was there "last year, 1963." The last time was "day before yesterday." He described the condition as to "rocks busted," "slabs busted," and "leaks in the house." His estimate of cost of restoration was based on the condition of the property as it was "right now."

Another factor enters into the time of determination of the damages. Plaintiff testified that the effects of the blasting *continued* to appear after the blasting had occurred. "After they got through blasting and they are settled, the foundation and stuff is settling down and it has thrown my building off from the concrete and the concrete sidewalk in the front, that is all cracked, it was opening up, now it is starting to settle and it is closing the cracks, after the rain comes and softens it up it is starting to settle, I could put my thumb in underneath of the porch, now it starting to settle, I can put my little finger in it at some places, it is closing it up; they ain't blasting no more." This condition of settling had not occurred before the blasting. "Well, they ain't quite closed yet, but they are settling and my floor in the house is raising, waving like (indicating)."

■ The evidence justifies the conclusion that actual results of the explosives were not completely ascertainable immediately after they had occurred and that the injuries suffered were not susceptible of an immediate, on-the-exact-day determination but became greater as time elapsed.

■ The cost of repairs or restoration (by witness Libby) is competent evidence to be considered in determining the damage suffered (see Langdon et al. v. Koch, Springfield Court of Appeals, 393 S.W.2d

1. Peters v. Shull, Mo.App., 379 S.W.2d 837(6); Bolton v. Missouri-Kansas-Texas Railroad Co., Mo.App., 373 S.W.2d 169, 172; Schaefer v. Frazier-Davis Const. Co., Mo.App., 125 S.W.2d 897,

898; Brown v. Pennsylvania Fire Ins. Co., Philadelphia, Mo.App., 263 S.W.2d 893, 899; Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158, 164.

66; Bolton v. Missouri-Kansas-Texas Railroad Co., Mo.App., 373 S.W.2d 169, 174; De Long v. Broadston, Mo.App., 272 S.W. 2d 493[6]) and is sometimes the predominant criterion. Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158, 164; Beaty v. N. W. Electric Power Cooperative, Mo.App., 296 S.W.2d 921, 925; Thompson v. Granite Bituminous Paving Co., 199 Mo.App. 356, 203 S.W. 496, 498.

■ Rule 79.04 was promulgated to furnish relief from manifest injustice. It was not designed to relieve the litigant from his obvious duty to give the trial court an opportunity to rule, and it was not intended to further a judicial exercise in nit-picking. We rule against appellant on this point.

■ Appellant's second claim of error is that plaintiff's instruction on the measure of damages contained a "tail"—"said damages not to exceed the sum of $7,500.00." It has been said, and we agree, that an instruction which suggests an amount which can be recovered, without an explanation to take away the possibility that the jury will accept the amount as one which the judge thinks would be a proper figure, is improper.[2] In some instances the courts have reached the matter by ordering a remittitur because it deemed the award to be excessive.

However, in this case, the amount sued for, and the maximum mentioned in the instruction, was seventy-five hundred dollars, whereas the verdict was for five thousand dollars. Quite obviously the jury used its own judgment. In such situation it is invariably held that the giving of such an instruction does not constitute reversible error.[3] We so hold in this case.

The final contention is in respect to argument of counsel. In his closing argument, plaintiff's counsel was permitted to argue the extent and amount of the damages and to read and make comment on the court's instruction in reference thereto over defendant's objection that plaintiff's counsel "didn't argue any damages in his opening statement."

■ The generally accepted rule in argument of a case is that counsel having the affirmative (usually the plaintiff) should develop in his opening statement the points and matters which he wishes to present. The defendant may answer such argument and develop all the points he considers of importance. Then the plaintiff in closing may reply to and counter any argument the defendant has made. The closing argument should be in the nature of a rebuttal. The plaintiff should not conceal or "sandbag" by wholly omitting from argument a salient point or feature of the case and then (if it is not argued by defendant [see Sullivan v. Hanley, Mo.App., 347 S.W.2d 710, 716]) make a closing argument on that feature.[4] Despite the general rule, the means of applying it in the handling of arguments cannot be made fixed and exact because the facts and circumstances of cases vary widely and the application must be somewhat flexible. Thompson on Trials (2d ed.) § 935, p. 780, treats argument of counsel as analogous to introduction of evidence and draws a parallel with the discre-

2. Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S.W. 777, 785; Bales v. Kansas City Public Service Co., 328 Mo. 171, 40 S.W.2d 665, 670; see Hamilton v. Standard Oil Co., 323 Mo. 531, 19 S.W.2d 679, 691; Pogue v. Rosegrant, Mo., 98 S.W.2d 528, 533.

3. Golden v. National Utilities Co., Mo., 201 S.W.2d 292(14); Grubbs v. Kansas City Public Service Co., 329 Mo. 390, 45 S.W. 2d 71; Sloan v. Farmer, Mo.App., 168

S.W.2d 467, 471; Bornhoft v. City of Jefferson, Mo.App., 118 S.W.2d 93, 99; Young v. City of Farmington, Mo., 196 S.W.2d 124, 127.

4. 53 Am.Jur. Trial, § 462, p. 366; 88 C.J.S. Trials § 169, p. 335 et seq.; Thompson on Trial (2nd ed.) § 935, pp. 779–780; Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838, 844; see 93 A.L.R.2d Annotation: 274, 281.

tionary power of the trial court to permit evidence in rebuttal which should have been offered in chief, provided it has been inadvertently overlooked or not availed of because of accidental circumstances, and by this analogy gives the court the discretion to permit concluding argument upon matters not referred to by the opposite counsel. In Shaw v. Terminal Railroad Ass'n of St. Louis, Mo., 344 S.W.2d 32, 37, 93 A.L.R. 2d 265, Eager, J., puts it this way:

"* * * We recognize that there may be cases where a point has been inadvertently overlooked in the opening and, in the court's discretion, it may be permissible to supply it later; and it seems that the courts have a certain amount of discretion in refusing or permitting a closing argument when the defendant has waived his argument."

For this reason, the government of argument of counsel, subject to the broad general rule, is left to the sound discretion of the trial judge. Only when that discretion is abused will the appellate courts intervene. Bertram v. Wunning, Mo.App., 385 S.W.2d 803(7); Greathouse v. Wolff, Mo.App., 360 S.W.2d 297, 302; Davis v. Terminal Railroad Association of St. Louis, Mo., 299 S.W.2d 460, 465; and cases cited supra.

 We have no hesitation in saying that it is improper, unfair, and often prejudicial for the plaintiff to omit any mention of the amount and extent of the injury or damage in his opening argument and (unless the defendant chooses to argue such) to devote his closing argument to this feature of the case so that defendant has no opportunity to reply to this newly introduced feature. Counsel should not conceal or withhold his position. He should play the cards dealt him face up and in his rightful turn. He has no right to sneak an ace out of the discards and play it later.[5]

The respondent contends that he is "home free" in respect to such procedure unless the defendant gives plaintiff's counsel *notice or warning of intent* to make objection at the time plaintiff makes his opening argument. He, of course, relies upon Shaw v. Terminal Railroad Ass'n, Mo., 344 S.W.2d 32, supra. But we do not understand the Supreme Court to have so held. In that case plaintiff *did* state in his opening argument that he would, in his concluding argument, cover "some other points"; and at that point defendant *did* give warning that he would object to argument of the additional points. The fact that warning was given of course removed any doubt that the plaintiff's counsel had inadvertently or accidentally transgressed and emphasized the unfairness of his act. But we do not understand the court to have held that such warning is always necessary. It would seem to us that counsel are presumed to have knowledge of what is common fairness in procedures, and that it should not be necessary to warn in advance against a wrongful and improper act. Lack of advance warning does not wash away prejudical error. If this were all there was to the case, we would reverse and remand. But we are confronted with a deficiency in the record.

 We do not find in the transcript a complete record of either plaintiff's opening argument or defendant's argument. All we find are some excerpts (not concerning this matter), with objections thereto. Nor did the trial court in ruling on the objections make any finding as to whether amount of damage had been previously argued. In the words of Matthes, J., in Yankoff v. Allied Mutual Insurance Co., Mo. App., 289 S.W.2d 471, 477: "Quite obviously it is impossible for us to say an argument was prejudicially erroneous when we have no way of knowing what it consisted of." And we have no way of knowing whether

5. Supreme Court Rule 4.22, V.A.M.R.; Shaw v. Terminal Railroad Ass'n of St. Louis, Mo., 344 S.W.2d 32, 36, 93 A.L.R. 2d 265; Goldstein v. Fendelman, Mo., 336 S.W.2d 661, 667; see Cumming v. Allied Hotel Corporation, Mo.App., 144 S.W.2d 177, 182.

or not plaintiff and defendant, or either of them, did actually argue the very matter to which appellant objects and thus open the way for its expansion in the closing argument. Respondent does not concede he did not refer to the questions in his argument, and it is not agreed that defendant did not cover it; so we must take the record as it comes to us. Baker v. Missouri National Life Insurance Co., Mo.App., 372 S.W.2d 147, 155; West's Missouri Digest, Appeal and Error, ☞ 712. We cannot, therefore, say that the trial judge abused his discretion.

The judgment is affirmed.

STONE and HOGAN, JJ., concur.