STATE of Missouri, Respondent,

v.

Gerald D. PETERSON, Appellant.

No. 53017.

Supreme Court of Missouri, Division No. 2.

Feb. 12, 1968.

---

Norman H. Anderson, Atty. Gen., Jefferson City, Robert L. Carr, Special Asst. Atty. Gen., Potosi, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

EAGER, Judge.

Defendant was charged by information with the burglary of a liquor store in North Kansas City. He was not charged with stealing. Upon trial, the jury convicted him and fixed his punishment at a term of three years. He was represented at the trial by privately employed counsel, and he is so represented here. Upon this appeal the only point raised concerns the final arguments and we shall not need to state the evidence in detail. We may say here, however, that the record discloses that the defendant seriously contested the issue of his identity, as well as his guilt.

At approximately 2:30 a.m. on August 18, 1966, the front door of Laurie's Liquor Store at 10th Street and Swift Avenue in North Kansas City was forced open. A burglar alarm sounded at police headquarters and three cars, these being practically the whole force on duty at the time, responded to the dispatcher's call. Each car contained one officer. One, William Boydston, saw a man running out of the front door and around the building; the man wore "dark clothing," was approximately six feet tall and was "stocky." The next officer, Edward L. Smith, stopped his car at the corner of the building and saw a "figure" run along the side of the building toward the street; the man wore dark clothing. The third officer, Sergeant Brant, approached the scene on Swift Avenue and as he did so a man ran out into the street toward his car; he put on his brakes and swerved to avoid hitting the man, and thus crashed his car into a light pole. However, he testified that the man ran in front of his car at a distance of perhaps one or one and one-half car lengths, that his lights shone on him, and that he saw his face; he identified the man very specifically as the defendant. It was also shown in the record that officer Brant recognized the man at the time as Peterson, this defendant, and so told the other officers. His means of knowledge was not asked or given. The wrecking of the police car caused some confusion and the fleeing man was not apprehended. The neighborhood was searched by the officers, and a car was spotted at the rear of a rooming house or apartment building (referred to as the "Palmer House"), which the police recognized as, or learned by radio to be, that of defendant. This car was kept under surveillance and, after perhaps an hour, a man entered the car. A nearby officer approached and the man drove hurriedly away without lights, despite an order from the officer to "hold it." That officer definitely identified the driver as the defendant, whom he

knew. The car narrowly missed another police car near the entrance of the driveway, "fishtailed" down the wet street, drove around a barrier and finally ran into a building, having been shot at several times in the interval by both of the officers. No one was in the car when the police got there. The officers agreed that the man in that car was wearing a lightcolored shirt, but whether it was a "T shirt" or not, they did not know. The officer in the police car at the entrance to the driveway testified that he also recognized the driver as the defendant.

The attendant at a nearby Apco filling station was interviewed and told to watch for a man of a certain description. There was controversy in the evidence concerning the description so given. This attendant, Robert Jones, testified that a man came in later and sat around for 30–40 minutes and drank coffee, and that he answered generally the description given; further, that this man sat in the shadows in a side room; that he left in a taxicab and that he, Jones, then notified the police. A police officer, in rebuttal, denied that he had given Jones such a description as Jones testified to. Jones further testified that the man who stopped in his station was not the defendant.

Mildred Andrews, who lived across the street from the spot where the fleeing man's car crashed into a building, turned over to the police three receipts which she had found later that morning in the corner of her front yard. These were lying in a "little pile" very near a rope which had been stretched along the side of her yard to keep people from walking across it; she also found that a metal pipe to which the rope was tied had been bent over to within approximately one foot of the ground. The receipts received in evidence were all issued to defendant, one from a bonding company, one from the firm of attorneys which now represents him, and one of an undisclosed nature. In the liquor store it was found that one or more cigar boxes and some papers were scattered about on the floor, and that a filing cabinet had been opened. Some currency from the filing cabinet was on the floor with the papers, but apparently nothing was missing. It had been raining off and on during much of the night, and wet footprints were found. Fingerprints were taken but the results were ineffective because of moisture, presumably from the hands or fingers of the person who made them.

Defendant does not question the submissibility of the case, but we have stated the foregoing facts in order to show more clearly the evidence and the issues which were submitted to the jury. After a warrant was issued for the defendant he surrendered to the police voluntarily.

The sole point relied upon on this appeal is that the trial court "erred and abused its discretion" in overruling defendant's objections to portions of the State's concluding argument, and in overruling his motion for a mistrial based upon that argument. In the State's opening argument the assistant prosecutor reviewed the evidence in detail, including that upon the question of identification, the finding of the receipts, and the testimony of the filling station operator. Based upon this, he asked for a verdict of "guilty." That argument did not include any discussion of or reference to punishment. Defendant's counsel, in his turn, also reviewed the evidence and sought strenuously to disparage the identifications made by the State's witnesses. He avoided entirely all reference to the question of punishment. In the State's closing argument, after reviewing some of the evidence, the assistant prosecutor said: "* * * we are asking that this jury bring back a verdict of guilty, and we're asking not only that you bring back a verdict of guilty, but we're asking that you assess the maximum sentence." Out of the presence of the jury defense counsel promptly objected for the reasons that the matter had not been mentioned in the State's opening argument and that he had made no argument on the subject; he further moved that the statements be stricken, and for a mistrial. After

a very little colloquy, the Court overruled both the objection and the motion. Thereafter, counsel for the State continued with his argument, asked again for a maximum sentence of ten years, and added: "There's just one way to stop burglaries, there's just one way to stop crime in this county, and that is to let the criminals know that if they commit a crime in this county they will be punished. I don't mean by a slap on the wrist, I mean by punishment, I mean punished." Again counsel for defendant objected on the "same grounds" and was overruled. Continuing, the assistant prosecutor argued: "* * * If these people like Gerald Peterson, if they are to know that we want law and order in this county that we don't want burglaries, they are going to have to be made to believe it, and believe me, your conviction in this case, and the returning of a maximum sentence of ten years will be just like a red flag." Another objection was then made and overruled. Thereafter the State's counsel continued: "It'll be just like a red flag. The criminals will know then that Clay County doesn't want any crime, that if you come over here and burglarize you'll go to the penitentiary and you'll go there for a long stretch. And this is, I think, is what the people of Clay County want. We don't want these people over here committing crimes, and if they come over here and commit a crime we want to send them down for just as long as we can because we want it absolutely understood—" We have quoted these portions of the argument in order to show the context in which the requests for a maximum sentence were made.

Counsel for defendant relies strongly on Shaw v. Terminal R.R. Ass'n of St. Louis, Mo., 344 S.W.2d 32, 93 A.L.R.2d 265, a civil case for personal injuries. There plaintiff's counsel, in his opening argument, discussed the evidence and his theory of liability, stating also that in his concluding argument he would develop "some other points." At that time defendant's counsel notified him that he should "make all of his points" then, including the matter of damages, so that defendant might answer, or that it would later object. The Court overruled this request. Defendant's counsel proceeded with his argument but did not touch upon the question of damages. In plaintiff's concluding argument his counsel dwelt at length upon the injuries and sundry elements of the claimed damages, concluding with a request for a verdict of $25,000. To all of this defendant's counsel promptly objected, but the objections were overruled. Thus, the entire argument concerning injuries and damages was withheld until the plaintiff's concluding argument. On the appeal this Court held that such action was improper, that the trial court abused its discretion in permitting the argument, and that the error was prejudicial; it further held that the question was not merely whether the judgment was excessive, because no one could know what the jury might have done had the arguments proceeded in the proper manner. Concluding, the Court said, loc. cit. 37: "Counsel having the affirmative will be held to the requirement of fairly stating his essential points in the opening argument, at least to the extent that the defendant may fairly answer them; and a failure to require this will ordinarily constitute error, if the point has been properly raised at the time and preserved." This principle has been recognized in other civil cases, before and since, but some have been distinguished on their particular facts. Goldstein v. Fendelman, Mo., 336 S.W.2d 661 (no sufficient objection); Misch v. C. B. Contracting Co., Mo. App., 394 S.W.2d 98 (record of arguments incomplete, but opinion contains an excellent discussion); Conlon v. Roeder, Mo., 418 S.W.2d 152 (where injuries and damages had been discussed in detail by both plaintiff and defendant and the only addition in the concluding argument was the mention of a specific figure which the Court instructed the jury to disregard); Cumming v. Allied Hotel Corp., Mo.App., 144 S.W.2d 177 (discussion of additional exhibits in concluding argument); Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838 (objection only to statement of amount

sought, which the court instructed jury to disregard, but denied mistrial). The subject is also considered in the following cases and texts: Bertram v. Wunning, Mo.App., 385 S.W.2d 803; Samborski v. Price, Mo. App., 417 S.W.2d 205; Sullivan v. Hanley, Mo.App., 347 S.W.2d 710; 27 Mo. Law Review 59; 93 A.L.R.2d 273 et seq.

It is thus generally recognized in civil cases that it is error for counsel who has the burden of the issues to omit all argument of injuries and damages in his opening argument, and to cover those matters in his concluding argument, thus depriving the defendant of all opportunity to fairly answer that argument. This, of course, assumes that the matter has been properly raised and preserved. We do not attempt to review here all the possibilities of excuse or waiver discussed in the cited cases; and the question of prejudice remains to be decided in each individual case.

The question has seldom been considered in criminal cases, but this Court did so in State v. Hale, Mo., 371 S.W.2d 249. There a term of ten years for second degree murder had been fixed by the trial jury. That term was the minimum for the offense. The defendant had contended that the fatal shot was fired accidentally. In the State's opening argument counsel had referred to the offense as a "serious" one, with the suggestion that the verdict would be serious to the State as well as to the defendant, but without any specific recommendation of punishment. The argument of the defendant was not shown in the transcript; this was a material omission. In the State's concluding argument, the prosecutor stated that the act of defendant was an "unnecessary killing," asked if defendant should be freed to commit other crimes, argued "that a slight punishment in a case of this kind would encourage others to do the same thing," and warned the jury against giving defendant "a tap on the wrist * * *," by saying "you have been a naughty boy." Specific objection was promptly made. This was overruled on the theory that Shaw, supra, had no applica-

tion in criminal trials. Counsel for the State proceeded with his argument, concluding with the request for a "severe" punishment. On the appeal this Court, stating that this raised a "serious question," first considered Rule 4.22, V.A.M.R., and stated that it was unfair, in the trial of criminal as well as civil cases, for counsel thus to deprive the defense of an opportunity to answer "new points"; quoting from 23A C.J.S. Criminal Law § 1089, it stated the legitimate purpose of concluding arguments. The Court said, however, that in view of the "large measure" of discretion of the trial judge, the decision depended upon the "totality of the attendant circumstances," there present. As such, the Court noted: that the State's counsel had argued in opening that the case was a "serious" one, namely, murder in the second degree; that this was an "oblique or implied reference to the question of penalty"; that the jury was informed that a term of ten years was the minimum for that crime; that defendant's counsel had been afforded some opportunity to answer, and that the Court was unable to tell from the record whether he had in fact done so; and that the State had not recommended any specific number of years. The Court indicated also that the objections had not been pursued as they might have been. Thus, it was concluded that there was no abuse of discretion, and that a lack of prejudice was "affirmatively demonstrated" by the fact that defendant received the minimum punishment.

It is clear that the Court in Hale, supra, recognized the inherent error in the practice now complained of, subject to determinations of waiver, the lack of prejudice, and possibly other factors. In State v. Shannon, Mo., 413 S.W.2d 198, the Court held that a similar point could not be considered because it had not been assigned as error in any way in the motion for new trial, and the Court further declined to consider the question as "plain error."

We do not question the propriety of the decisions in Hale and Shannon, supra, upon

their respective facts; but in the present case we note the following: there was not even an "oblique" reference to punishment in the State's opening argument; specific objections were promptly made at the first opportunity and they were subsequently preserved; defendant's argument is fully shown in the transcript and it contained · nothing to constitute a waiver; counsel for the State did recommend a specific number of years namely, ten, which was the maximum permitted by the instructions and the statute; no relief was given by the trial court, for all the objections and the motion for a mistrial were overruled. It is also material to note here that after the initial ruling (and also after the repetitions of the ruling) counsel for the State proceeded to argue at length that there was only one way to stop burglaries in Clay County, namely, to let people "like Gerald Peterson" know that the residents there wanted law and order, and that the jury should let the *criminals* know that if they "come over here" and burglarize, they will be sent up "for a long stretch," namely, "for just as long as we can * * *."

■ The State asserts that it was to be expected that the question of punishment would be argued at some time, and that the defendant could not have been misled, particularly in view of the instruction which fixed the range of punishment. It also refers to the present procedure as "the traditional pattern of argument in criminal cases"; if such has been "the traditional pattern," that pattern is now changed. And it is perfectly obvious that it would have been rather foolish for defense counsel to have *initiated* any argument concerning punishment, for he might thereby have been considered to be admitting defendant's guilt, at least by implication. We do not now hold or imply that counsel for the State may not elaborate upon the issue of punishment in his concluding argument, *if* he has made a fair statement of his position in the opening.

We have held that " * * * so long as a prosecutor stays within the record and its

reasonable inferences, he may legitimately argue the necessity of law enforcement as a crime deterrent, and he may argue also that the responsibility for the suppression of crime and the protection of the public rests upon the trial juries." State v. Laster, Banc, 365 Mo. 1076, 293 S.W.2d 300, 306; see also, State v. Wells, Mo., 367 S.W.2d 652; State v. Jones, Mo., 384 S.W.2d 554. But when such an argument is coupled, as here, with the first recommendation for the imposition of a maximum punishment in the concluding argument, it greatly aggravates the effect of postponing the argument concerning the punishment. The defendant here was sentenced to more than a minimum term; as stated in Shaw, no one can know what the jury would have done had the argument proceeded in the normal course and had defendant's counsel thus been given an opportunity to answer. We do not consider that the imposition of a term of three years instead of ten eliminated the inherent prejudice.

In State v. Fraley, 342 Mo. 442, 116 S.W. 2d 17, loc. cit. 20, the Court said, in considering the right of a defendant to a converse instruction: "In civil cases defendants have the right to submit their defenses by instructions in a direct way. The rule should not be otherwise where life and liberty are at stake. We therefore rule that in all criminal cases, if a defendant offers a correct instruction as the converse of the State's main instruction, it should be given, unless fully and fairly covered by other instructions."

■ We hold that the rule announced· in Shaw, supra, is applicable to the trial of criminal cases. And, in order that all misapprehension may be avoided, we hold that in criminal cases it is not required that a *warning* be given in advance to the State's counsel. It is not appropriate for us to amplify here the rule in civil cases; for the present, the Shaw opinion must speak for itself. The principle which we have discussed above has been recognized in our adjudicated criminal cases long enough for

831

the Bar and the trial courts to be familiar with it, and it should not be necessary to wave a flag of warning in every case. The point will, of course, be ruled in each case on its own peculiar facts, including these issues: whether a fair statement of the State's position has been made in some manner in its opening argument; whether any waiver has been made by the defendant, either by his counsel's own argument or by the failure to object properly and to preserve the point; and, lastly, a determination of the question of prejudice in view of all the circumstances.

We hold here that the final argument of the State's counsel constituted prejudicial error; also, that the usual discretion permitted to the trial courts in ruling upon arguments is not broad enough to encompass and nullify this error, and that it abused its discretion. The judgment is reversed and the cause is remanded for a new trial.

All of the Judges concur.