**STATE of Missouri, Respondent,**

v.

**Keith GILMORE, Appellant.**

**No. WD 55963.**

Missouri Court of Appeals,
Western District.

Oct. 19, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 23, 1999.

Judith C. LaRose, Asst. Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., ULRICH and ELLIS, JJ.

BRECKENRIDGE, Chief Judge.

Keith Gilmore appeals from his convictions of murder in the second degree, § 565.021,[1] and armed criminal action, § 571.015. The trial court sentenced Mr. Gilmore to thirty years imprisonment for second degree murder and twenty-four years for armed criminal action. The trial court ordered the sentences served concurrently. On appeal, Mr. Gilmore argues that the trial court erred in (1) permitting the State to improperly argue that the jury impose the maximum sentence for the first time in its rebuttal closing argument; and (2) overruling his motion in limine and objection to hearsay testimony. Because this court finds that Mr. Gilmore did not suffer manifest injustice as a result of the State's arguing punishment for the first time in its rebuttal closing argument and the hearsay testimony was admissible as a tacit admission, the judgment of the trial court is affirmed.

## Factual and Procedural Background

The sufficiency of the evidence is not challenged on this appeal, so only a brief statement of the underlying facts is necessary. On the evening of December 7, 1996, Mr. Gilmore approached Don Hawley in the neighborhood of 24th and Olive in Kansas City. Mr. Hawley, a retired police officer who was working as a college recruiter, had an appointment to interview someone in the neighborhood. Mr. Gilmore, who was armed with a .38 caliber revolver, demanded money from Mr. Hawley. When Mr. Hawley flinched, Mr. Gil-

1. All statutory references are to the Revised Statutes of Missouri 1994.

more shot him in the eye. As Mr. Hawley lay bleeding on the ground, Mr. Gilmore searched Mr. Hawley's pockets and took his police badge. The shooting occurred outside the home of Dennis Wilson, an acquaintance of Mr. Gilmore's. Although Mr. Wilson did not see the shooting, he saw a man moving around at the back of a pickup truck parked in front of his neighbor's house. The man stood up and walked through Mr. Wilson's bushes to within two or three feet of where Mr. Wilson was standing, jumped a fence, and went through the alley. Mr. Wilson recognized the man to be Mr. Gilmore. Mr. Wilson and his girlfriend then walked to the rear of the pickup truck where they found Mr. Hawley lying on the ground. Mr. Hawley later died from the gunshot wound to his head. Mr. Gilmore was indicted for felony murder in the second degree, § 565.021.1, and felony armed criminal action, § 571.015.1.

At trial, several people who knew Mr. Gilmore testified to incriminating statements they heard Mr. Gilmore make both before and after the shooting. A few weeks before the shooting, Mr. Gilmore repeatedly told an acquaintance, Shantee Osborn, that he was broke and was going to rob someone. Several days before the shooting, Mr. Gilmore also told Mr. Wilson that he was going to rob someone.

Immediately after the shooting, as Mr. Gilmore was running out of the alley, he ran into Lonnel Taylor. Mr. Taylor asked Mr. Gilmore why he was running. After a moment of hesitation, Mr. Gilmore told Mr. Taylor that he had tried to rob a man, but shot the man in the eye after the man flinched. Mr. Gilmore told Mr. Taylor that he then checked the man's pockets to see if there was anything in them. When Mr. Taylor accused Mr. Gilmore of lying about the incident, Mr. Gilmore showed Mr. Taylor the .38–caliber revolver he used to shoot Mr. Hawley.

The night after the shooting, Ms. Osborn overheard someone asking Mr. Gilmore if he had killed a white man. The only thing Mr. Gilmore said in response was "Man, shut the f— up." Also after the shooting, Mr. Gilmore talked to his cousin, Nekka Sumlin, with whom he was living at the time. Mr. Gilmore told Ms. Sumlin that he had been involved in a robbery at 24th and Olive, and he had touched the victim's briefcase during the robbery. Mr. Gilmore said that the victim had been shot and killed, and that he had buried the victim's badge.

In his defense, Mr. Gilmore denied shooting Mr. Hawley, offered evidence of an alibi, and claimed that in arresting him for the murder, the police "got the wrong guy." The jury returned a guilty verdict on both charges. The jury recommended sentences of thirty years imprisonment on the murder charge and twenty-four years on the armed criminal action charge. The trial court adopted the jury's sentencing recommendations. The trial court also ordered Mr. Gilmore to serve the sentences concurrently. This timely appeal followed.

## The Trial Court Did Not Plainly Err In Permitting The State's Argument On Punishment

As his first point, Mr. Gilmore asserts that the trial court erred in allowing the prosecutor to argue punishment for the first time in her rebuttal closing argument. Mr. Gilmore claims that because the prosecutor's argument left him without an opportunity to respond, he is entitled to a new trial. It is noted that Mr. Gilmore does not claim trial court abuse of discretion in its denial of his motion for a mistrial, but instead characterizes the trial court's error as the overruling of his objection to the argument.

A trial court's rulings on closing argument are reviewed only for an abuse of discretion. *State v. Mahurin*, 799 S.W.2d 840, 844 (Mo. banc 1990). To constitute reversible error, there must be both an abuse of discretion by the trial court and prejudice to the defendant as a result of such abuse. *Id.* The State is not per-

mitted to raise the issue of punishment for the first time in its rebuttal argument. *State v. Peterson*, 423 S.W.2d 825, 830 (Mo.1968). Whether an appellant's claim that the State improperly argued punishment in the rebuttal portion of its closing argument constitutes reversible error depends upon the application of several factors to the particular circumstances of the case. *Id.* at 831. Those factors include the following:

> [W]hether a fair statement of the State's position has been made in some manner in its opening argument; whether any waiver has been made by the defendant, either by his counsel's own argument or by the failure to object properly and to preserve the point; and, lastly, a determination of the question of prejudice in view of all the circumstances.

*Id.* Applying these factors to this case, the State did not mention punishment in its initial closing argument, nor did it give any indication that it was seeking the maximum penalty. Thus, the State did not make a fair statement of its intention to seek the maximum penalty in its initial closing argument.

Whether Mr. Gilmore waived any objection to the State's argument, which is the second factor of the *Peterson* test, depends upon the how this court interprets the trial court's ruling on Mr. Gilmore's objection to the punishment argument. The argument, objection and ruling are as follows:

> MS. MCGOWAN (prosecutor): ... And when you go up there and you return your guilty verdicts, the only possible punishment in this case is the maximum. And when you go up and—
> MR. LANCE (defendant's counsel): Objection.
> THE COURT: Sustained.
> MS. MCGOWAN: When you—
> MR. LANCE: Judge, may counsel approach, please?
> (THE FOLLOWING PROCEEDINGS WERE HAD AT THE BENCH:)

> MR. LANCE: Objection, your Honor.
> MS. MCGOWAN: It's not—the spirit of the case law does not say we can't argue maximum from minimum. It just basically says that we don't mention a specific—we can't mention specific terms of years. As a matter of fact, they have loosened that up a lot here recently. We can discuss punishment in the second half. There is nothing wrong with me saying maximum.
> MR. LANCE: Well, maybe I am not familiar with the case law, but from what I know and what I have heard just now, I think I have to move for a mistrial.
> THE COURT: Overruled.
> (THE PROCEEDINGS RETURNED TO OPEN COURT.)
> MS. MCGOWAN: Ladies and gentlemen, the maximum punishment is the only appropriate punishment in this case when someone takes someone's life.

\* \* \*

From the sequence of the exchanges between counsel and the trial court, this court finds that the trial court overruled only Mr. Gilmore's motion for a mistrial, and not his objection to the prosecutor's first statement that the "only possible punishment" in this case was the maximum punishment. The trial court did not, as Mr. Gilmore claims, allow the State to improperly raise the issue of punishment in its rebuttal argument. When Mr. Gilmore objected to the prosecutor's first statement regarding punishment, the trial court sustained his objection.

▮ Despite the fact that the trial court sustained his objection to this line of argument, Mr. Gilmore did not object to the prosecutor's second statement that "the maximum punishment is the only appropriate punishment in this case." Based upon the fact that the trial court sustained Mr. Gilmore's objection to the prosecutor's first improper statement, it presumably would have sustained Mr. Gilmore's objec-

tion to the prosecutor's second improper statement, had Mr. Gilmore made it. As he did not object to the prosecutor's second improper statement regarding punishment, Mr. Gilmore failed to properly preserve his allegation of error regarding the statement. *State v. Thompson*, 531 S.W.2d 63, 66 (Mo.App.1975). Therefore, under the second factor of the *Peterson* test, Mr. Gilmore waived any objection he had to the State's improper argument. *Peterson*, 423 S.W.2d at 831.

Pursuant to the third factor of the *Peterson* test, this court is to make a determination of prejudice to Mr. Gilmore, in view of all of the circumstances, as a result of the State's improper argument. *Id.* One of the relevant circumstances is Mr. Gilmore's failure to properly preserve his claim of error regarding the argument. A claim that is not properly preserved is reviewable only for plain error. Rule 30.20. Plain error relief is appropriate only if this court determines that Mr. Gilmore has suffered a "manifest injustice or a miscarriage of justice" as a result of the alleged error. *State v. McMillin*, 783 S.W.2d 82, 95 (Mo. banc 1990). "Relief should rarely be granted on assertions of plain error committed during closing arguments." *State v. Barnett*, 980 S.W.2d 297, 306 (Mo. banc 1998). Improper comments made during closing argument usually do not affect the substantial rights of a defendant. *State v. Strubberg*, 616 S.W.2d 809, 818 (Mo. banc 1981). The improper argument must have had "a decisive effect on the jury's determination" to constitute plain error. *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998), *cert. denied*, 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999).

The Missouri Supreme Court has held that the State's arguing punishment for the first time in its rebuttal closing argument does not necessarily constitute plain error. In *State v. Shannon*, while the Supreme Court did not condone the State's waiting until its rebuttal argument to discuss punishment, it held that such argu-

ment is not "manifestly inflammatory," and "to permit the argument of punishment in final argument when not mentioned in the state's opening presentation is not 'plain error'...." 413 S.W.2d 198, 199 (Mo.1967). The Court did not question the propriety of *Shannon* when it decided *Peterson*. *Peterson*, 423 S.W.2d at 829–30. The Court noted that unlike the defendant in *Shannon*, the defendant in *Peterson* had preserved his claim of error regarding the State's closing argument. *Id.* at 830.

In this case, the jury sentenced Mr. Gilmore to a term of thirty years imprisonment on the second-degree murder count, and twenty-four years on the armed criminal action count. The State presented substantial evidence showing the brutality of Mr. Gilmore's crimes. Prior to the incident, Mr. Gilmore repeatedly told acquaintances that he needed money and planned to rob someone. After an apparently unsuccessful attempt to rob Mr. Hawley while he was still standing, Mr. Gilmore shot Mr. Hawley in the eye and then rummaged through Mr. Hawley's pockets as he lay suffering on the ground. In light of the brutality of Mr. Gilmore's crime, this court cannot say that the State's improper argument had a decisive effect on the jury's recommended sentence. Moreover, the trial court ordered Mr. Gilmore to serve the sentences concurrently. In doing so, the trial court significantly reduced any prejudice Mr. Gilmore potentially suffered by the State's argument. *See State v. Kriebs*, 978 S.W.2d 460, 467 (Mo.App.1998). Under the particular circumstances of this case, the prosecutor's second improper statement did not cause Mr. Gilmore to suffer manifest injustice or a miscarriage of justice entitling him to plain error relief. Mr. Gilmore's first point is denied.

### Mr. Gilmore's Out–Of–Court Statement Was Admissible As An Admission

As his second point, Mr. Gilmore argues that the trial court erred and abused its

discretion overruling his hearsay objection to the testimony offered by the State's witness Shantee Osborn that she overheard Mr. Gilmore talking with a third party, Gary Kitchen, in a restaurant on the night of the murder. Mr. Kitchen asked Mr. Gilmore if he had killed a white man. Mr. Gilmore replied, "Man, shut the f— up." Mr. Gilmore argues that this statement was inadmissible hearsay.

Appellate review of the trial court's admission of evidence is for an abuse of discretion. *State v. Bucklew,* 973 S.W.2d 83, 93 (Mo. banc 1998), *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Barnett,* 980 S.W.2d at 306. Hearsay statements are generally inadmissible. *Id.* The admission of a party opponent, however, is not hearsay. *State v. Brown,* 833 S.W.2d 436, 438 (Mo. App. 1992). All that is required for the admission of a party opponent to be admitted into evidence is that "the statements must be material to the issues of the case, must have sufficient probative value to be relevant, and must be offered by the opposing party." *Id.* at 439. The admission of a criminal defendant is relevant and material if it tends to incriminate the defendant, to connect the defendant to a crime, ort to manifest the defendant's consciousness of guilt. *State v. Isa,* 850 S.W.2d 876, 894 (Mo. banc 1993). The defendant need not expressly acknowledge his or her guilt for the statement to qualify as an admission. *State v. Bannister,* 680 S.W.2d 141, 148 (Mo. banc 1984). To determine whether the statement constitutes an admission, the statement must be viewed in light of the surrounding circumstances. *Id.*

A defendant's failure to deny an incriminating statement made in his presence can constitute a tacit admission. *State v. Merrill,* 846 S.W.2d 225, 228 (Mo. App.1993). A defendant may make a tacit admission by adopting the statement of another "either by silence or by other conduct significantly acquiescing in the import of the damaging statement." *State v. Forest,* 973 S.W.2d 492, 495 (Mo.App.1998). To qualify as a tacit admission, the following conditions must be met:

"(1) the statement must be made in the presence and hearing of the accused; (2) the statement must be sufficiently direct, as naturally would call for a reply; and (3) the statement must not have been made at a judicial proceeding, or while the accused was in custody or under arrest."

*State v. Samuel,* 521 S.W.2d 374, 375 (Mo. banc 1975) (internal citations omitted).

In this case, the statement made in Mr. Gilmore's presence was Mr. Kitchen's inquiry whether Mr. Gilmore had killed a white man. Mr. Gilmore and Mr. Kitchen were in a restaurant at the time, and Mr. Gilmore was not in custody or under arrest. Mr. Kitchen's question was sufficiently direct as would call for a reply. Instead of replying to Mr. Kitchen's question, Mr. Gilmore stated, "Man, shut the f— up." Mr. Gilmore's failure to deny Mr. Kitchen's accusation, coupled with his abrupt conduct, is sufficient to establish that he acquiesced in the import of the question. Therefore, both Mr. Kitchen's question and Mr. Gilmore's reply were admissible as Mr. Gilmore's tacit admission. *Id.* Mr. Gilmore's second point is denied.

The judgment of the trial court is affirmed.

All concur.