STATE of Missouri, Respondent,

v.

Franklin L. ELLIS, Jr., Appellant.

No. 59241.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Dec. 10, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 1992.

James C. Ochs, Schwartz & Ochs, St. Louis, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, Branson L. Wood, II, Pros. Atty., Hannibal, for respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction of deviate sexual assault in the first degree, § 566.070 RSMo 1986, and the sentence of one year in the county jail imposed by the jury and a $2500 fine imposed by the court. We reverse and remand.

Defendant managed a pet store in the neighborhood of the victim's residence. The victim was an illiterate fifteen year-old boy with some impairment of learning ability. His sixteenth birthday was on March 9, 1990. The amended information alleged that "on or about December 25, 1989, to March 1, 1990" the defendant had deviate sexual intercourse with the victim. The original information had alleged the time frame as "on or about February, 1990". The amended information was filed on September 17, 1990, one week prior to the date of trial. The trial court denied defendant's motions for a bill of particulars and for continuance.

The victim testified that at some time after Christmas and prior to February 28 he had gone to the pet store of defendant three times. On the first occasion he merely looked at items on display and asked if the store had any snakes. Upon receiving a negative answer he left. On the second occasion several days later he asked the defendant if he wanted his "thing sucked". The defendant declined the offer and the victim left. Within a day or two the victim returned and made the same inquiry. The victim testified that defendant suggested that the victim follow him upstairs to an apartment rented by another person. Upon his arrival in the apartment victim observed the defendant using a plunger on the sink in the kitchen of the apartment. Upon the victim's arrival he and defendant went into a bedroom where the victim performed an act of oral sodomy on defendant. Defendant gave the victim a dollar in the apartment and fifty five cents additional when they returned to the pet store so the victim could purchase cigarettes. Except for what went on in the apartment the victim's testimony was corroborated by the resident of the apartment, James Burks, who was present in the pet store during the

occurrence. Burks also testified to incriminating statements made by defendant after the victim left. That witness was at the time of trial incarcerated on charges involving his sexual activities with the same victim. Burks also had several prior felony convictions and by his own admission had a long history of drug and alcohol abuse.

The defendant testified substantially identically to the victim as to the first two appearances in the pet store of the victim. He further stated that on the third occasion he was utilizing a plunger in the sink in the apartment, of which he was landlord, when the victim entered the apartment. Defendant ordered the victim to leave because he did not want to be responsible for any theft and the victim left the apartment. When defendant returned to the pet store the victim was present. Defendant gave him money for cigarettes in order to get him to leave and told him not to return to the store. Defendant had no prior convictions. Defendant offered alibi testimony for the day of January 7, 1990, from his girlfriend and several other friends. That was the date which the victim had identified in his deposition as the day of the occurrence. On cross-examination at trial he again indicated that to be the date. The victim's testimony at trial, and the testimony of Burks, identified the occurrence in the apartment as being sometime in February. Defendant's testimony of the apartment episode also indicated it occurred sometime in February.

■ For two of his points the defendant premises error on the failure of the trial court to sustain his motions for continuance and for a bill of particulars and in utilizing a verdict director encompassing the extended time period contained in the amended information. It is defendant's contention that these actions of the court prevented him from utilizing an alibi defense. Time is not of the essence in sex offense cases. *State v. Hoban*, 738 S.W.2d 536 (Mo.App.1987) [2]; *State v. Meyers*, 770 S.W.2d 312 (Mo.App.1989) [6]. It is not necessary here for us to discuss the circumstances under which imprecision in identifying the time or date of the alleged sex occurrence may place such a burden on the defendant's ability to defend himself that fundamental fairness and due process require greater specificity. *See State v. Hoban, supra*, (Smith, J. dissenting). The testimony of defendant here, as well as that of the other two witnesses present in the pet shop, identifies the occasion of the alleged sexual encounter. Defendant admitted his presence in the apartment with the victim, he simply denied that any sexual encounter took place. There was no confusion or dispute that defendant and the victim were present at the time and place where the alleged sodomy occurred. Alibi was not a viable defense in view of defendant's own testimony of his presence at that time and place. The issue was simply one of credibility of the two competing versions of what occurred at that time and place. We find no error in the court's denial of the defendant's motions and in the giving of the verdict-directing instruction.

Defendant also premises error on three evidentiary rulings of the court. We find all three rulings to have been erroneous and prejudicial to defendant. Early in the testimony of the first witness, James Burks, the prosecutor asked whether in the witness' opinion the defendant was a homosexual. A proper objection was overruled. The witness responded in the affirmative. Shortly thereafter the prosecutor elicited from the witness, again over proper objection, that some thirteen to fifteen years previously the defendant had had the witness "suck his dick" and "had fucked me in the ass". These events had occurred in the pet shop when the witness was sixteen or seventeen years old. Later in the trial the defendant presented as a witness a police officer who had taken two statements from the victim. The defense elicited from the officer that in the initial statement the victim had discussed sodomitic activities with other persons but had made no reference to any such activities with the defendant. The defense also elicited that certain statements contained in the statement were inconsistent with Burks' testimony and that the statement contained no identification of the date of the occurrence and that such

information would be of importance in an investigation. During cross-examination of the police officer the prosecution moved the admission of the two statements. Over proper objection the exhibits were admitted and again over objection given to the jury to read. After an hour and a half of deliberations the jury requested and received the exhibits. The statements contain extensive, vivid and graphic descriptions of the victim's sodomitic activities with various men other than the defendant. They also describe attempts by men other than the defendant to have sexual relations with the victim's thirteen year-old sister. None of the activities with other men were in any way indicated as involving the defendant or as being known to him.

■ The state attempts to justify the testimony regarding homosexuality and the earlier incident with Burks on the basis that it establishes a common plan and general proclivity to commit the offense. To the extent this contention is based upon the proposition that homosexuality *per se* establishes a propensity to engage in sexual activities with children under the age of consent we reject it out of hand. It is no more reasonable to assume that a preference for same gender adult sexual partners establishes a proclivity for sexual gratification with same gender children than it is to assume that preference for opposite gender adult sexual partners establishes a proclivity for sexual gratification with opposite gender children. The sexual preferences of the defendant are irrelevant to the question of consent, actual or statutory. To allow its injection into the trial here was an attack on the character and reputation of the defendant which character and reputation he had not put into issue. As such it was error to allow the evidence of Burks' opinion that defendant was a homosexual. *State v. Johnson*, 496 S.W.2d 852 (Mo.1973) [6, 7]; *State v. Milligan*, 654 S.W.2d 204 (Mo.App.1983) [5, 6].

■ The testimony of Burks concerning his prior sexual activity with defendant was testimony of the commission of an uncharged crime. See §§ 566.060, 566.070, 566.080, and 566.090, subd. 1(3) RSMo 1986.

Such testimony is, as a general rule, inadmissible for the prejudice outweighs the benefits. *State v. Courter*, 793 S.W.2d 386 (Mo.App.1990) [1]. Certain exceptions to the general rule have been established to allow such evidence where it tends to establish motive, intent, identity, the absence of mistake or accident or a common plan or scheme embracing commission of crimes so related that proof of one tends to establish the other. *State v. Brooks*, 810 S.W.2d 627 (Mo.App.1991) [4]. In *State v. Lachterman*, 812 S.W.2d 759 (Mo.App.1991) [11, 12] we articulated an additional specific exception for evidence of sexual acts against children. We there stated: " . . . evidence that the defendant engaged in similar acts of sexual abuse of children of the same sex as the victim *near in time to the acts* charged tends to prove the defendant's guilt of the crime on trial." (Emphasis supplied). The basis for our recognition of this exception in *Lachterman* was that sexual activities with children is so unnatural and depraved that similar acts with other children demonstrates, *per se*, a propensity for sexual aberration and a depraved sexual instinct tending to prove the defendant's guilt of the charged crime. *Lachterman* dealt with children below the age of puberty. There is a substantial qualitative difference between such conduct with pre-pubescent children and those who are near the age of consent. This is not to say that the *Lachterman* exception is inapplicable to sexual activities with post-pubescent children under the age of consent, but rather that such activities do not *per se* carry with them the unnatural and depraved characteristics demonstrating on their face a propensity for sexual aberration and depraved sexual instinct. With post-pubescent children the trial court must exercise a higher level of examination before exercising its discretion to invoke the exception.

■ We need not, however, discuss the application of the *Lachterman* exception to the facts before us. *Lachterman* by its express language limits the exception to acts "near in time". Fifteen years by any definition is not "near in time".

Nor can we conclude that the common scheme or plan exception has applicability. That exception requires that the commission of the crimes be so related that proof of one tends to establish the other or that the crimes are so similar as to bear the handprint of the defendant. The latter aspect is really a question of identity not common plan or scheme. The utilization of that exception is discussed at length in *Lachterman* and need not be repeated here. There is no showing here of any similarity between the two episodes involved other than some proximity in the ages of the young men involved and the occurrence of both episodes at the pet store. But in the case before us the pet store was selected by the victim not by the defendant. There is no indication that the victim was lured by the defendant to the store for the purposes of illegal activity. The victim entered the store for the purpose of soliciting the conduct charged. The victim's statements, which should not have been admitted into evidence, reflected that he made similar solicitations to other people in other locations. The involvement of the pet store was purely fortuitous and not demonstrative of any plan or scheme. The requirements of the common plan or scheme exception are not met simply because the illegal acts are the same. *State v. Brooks, supra.*

■ Additionally, the remoteness in time between the two episodes precludes the utilization of such an exception. Comparable remoteness was found to preclude utilization of the exception in *State v. Courter, supra,* [6] and *State v. Cutler,* 499 S.W.2d 387 (Mo.1973) [2]. The state's reliance on *State v. Muthofer,* 731 S.W.2d 504 (Mo.App.1987) is misplaced. While in that case some of the incidents occurred many years before the charged offense, the evidence established a continuation of such incidents up to the time of the charged offense as a part of a continuing pattern. Here we have two incidents separated by fifteen years. There is no continuing pattern. There is no logical basis for concluding that these incidents were part of a common scheme or plan by defendant.

■ The statements by the victim were similarly inadmissible. Those portions dealing with the defendant's conduct were hearsay and were not inconsistent with the victim's testimony. They were not therefore admissible under § 491.074 RSMo 1986 as prior inconsistent statements. Their only purpose was to bolster the testimony of the victim which is forbidden. *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987) [1–3]. As to the remainder of the statements, they had absolutely no connection to the defendant and set out before the jury the sordid and pathetic life of the victim who was, as stated by the prosecutor in closing argument, a "male prostitute". Parading before the jury the occasions of his utilization by numerous men other than the defendant for sexual perversion may well have caused the jury to focus on the plight of the victim rather than the participation of the defendant.

■ The evidentiary rulings of the trial court in all three particulars discussed were erroneous. Each ruling individually carried potential of great prejudice and the cumulative effect of the three is overwhelming. This was not a case where the evidence of guilt was strong. The outcome of the case was dependent on the jury's assessment of the credibility of the three witnesses. The only corroboration for the testimony of the illiterate and learning-impaired victim was from a convicted felon facing charges for similar offenses against the victim. Defendant's testimony refuted that of the other two witnesses. The outcome of the case may well have been determined by the court's erroneous rulings.

Judgment reversed and cause remanded for new trial.

SIMON and AHRENS, JJ., concur.