STATE of Missouri, Respondent,

v.

Michael W. GARRETT, Appellant.

Michael W. GARRETT, Appellant,

v.

STATE of Missouri, Respondent.

No. 16829, 17607.

Missouri Court of Appeals,
Southern District,
Division Two.

April 6, 1992.

William J. Swift, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Chief Judge.

A jury found defendant guilty of involuntary manslaughter, § 565.024.1(2),[1] and he was sentenced to six years' imprisonment. Defendant appeals, and that appeal is No. 16829. After the trial, defendant filed a motion for relief under Rule 29.15, and the trial court denied the motion. Defendant appeals from that motion, and that appeal is No. 17607. The appeals are consolidated and will be dealt with separately.

### No. 16829

The information, in addition to its formal portions, charged that the defendant "on or about August 1, 1989, while in an intoxicated condition, operated a motor vehicle in Ozark County, Missouri, and while operating said motor vehicle acted through criminal negligence to cause the death of Vestal Junior Hobbs."

"A person commits the crime of involuntary manslaughter if he: ... (2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person." Section 565.024.1.

Section 562.016.5 reads:

A person "acts with criminal negligence" or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, because: (a) "The corpus delicti that defendant operated a motor vehicle while intoxicated was not demonstrated"; and (b) "The evidence failed to establish as a matter of law that defendant's conduct constituted a gross deviation from the standard of care that a reasonable person would exercise in this situation, since the evidence indicates defendant was driving at a maximum speed of 35 miles per hour in a 55 mile per hour zone under unfavorable weather conditions."

In reviewing defendant's challenge to the sufficiency of the evidence, this court considers the evidence and all reasonable inferences arising therefrom in the light most favorable to the verdict, and disregards those portions contrary to a finding of guilt. This court does not weigh the evidence nor determine the credibility of the witnesses. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Whittle*, 813 S.W.2d 336, 337 (Mo.App. 1991).

The state's witnesses were Rodney Hensley, Mike Yaeger, Deputy Sheriff Billy Ingle, Trooper Brian Thompson, Coroner Charles Fish, and chemist David Nanneman.

Hensley testified that he knew defendant and Vestal Hobbs and was with them on the evening of August 1, 1989, at a camp-

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

ground located less than 100 yards from Patrick's Bridge. Several people were at the campground. Hensley saw defendant and Hobbs leave the campground in defendant's 1973 Buick Century. Defendant was the driver, and he drove toward Patrick's Bridge. About 15 minutes later, Hensley "heard of" a vehicle being in the water at the bridge. Hensley and Mike Yaeger went to the bridge. Defendant's vehicle was in the river, upside down. Yaeger pulled Hobbs out of the vehicle and then pulled defendant out. Hensley did "CPR" on Hobbs and also tried mouth-to-mouth resuscitation, "but it didn't work." Hobbs died at the scene.

Yaeger testified that he was with some friends at the camp area near the bridge and became aware of the vehicle being upside down in the river. He heard someone holler "help." He said he pulled Hobbs out of the vehicle and then pulled defendant out of it.

Deputy Ingle and Trooper Thompson were summoned, and they arrived at Patrick's Bridge, which is on H Highway in Ozark County and crosses North Fork River. Ingle arrested defendant and gave him the Miranda warnings. Defendant told Ingle that he had been driving the vehicle and had been drinking. Defendant had only minor injuries. Defendant told Ingle he had had nothing to drink since the accident.

Ingle testified that defendant smelled strongly of alcohol, wobbled and swayed when he stood up, and was intoxicated. Defendant was taken to a hospital in West Plains for examination and a blood alcohol test. Defendant told Ingle he wasn't sure how he should be feeling because he had never killed anybody before. On cross-examination, Ingle said that defendant told him he was starting across the bridge and wasn't sure why, but the car went to the right and was in the water before he knew it.

When Trooper Thompson arrived at the scene, the vehicle was upside down in the water. Defendant's eyes were bloodshot and he had a strong odor of intoxicants on his breath. Defendant told Thompson he was driving and that he didn't know what

happened to cause the vehicle to drive off the roadway and that he had had two beers. Thompson stated that defendant was intoxicated and that Ingle had previously arrested him. Thompson informed defendant he had a right to refuse to undergo the blood alcohol test, but if he did refuse he could lose his driver's license. Such a test was later administered to defendant.

Thompson testified that the roadway on the bridge is about 13 feet wide and there is a curb, about seven inches square, on either side of the bridge. The curb had been broken away at the very end of the bridge at the north end. A caution sign, located 4½ feet north of the north end of the bridge, was "knocked ajar." It was still standing and had fresh scrape marks on it. The vehicle was in the water about 66 feet from the north end of the bridge. There were scrape marks along the curb on the right side of the bridge and marks on the bottom of the vehicle showing scrape marks.

Thompson further testified that if a person had approached the bridge and slammed on the brakes, the vehicle would leave scuff marks or skid marks. There were no skid marks or scuff marks on the roadway at the north end of the bridge. Thompson estimated the speed of the vehicle at 35 miles an hour but said that was an educated guess because there were no skid marks or scuff marks to measure. He said that there was nothing at the scene which would prevent someone operating a motor vehicle from going from one end of the bridge to the other while using ordinary caution. The roadway was clear and dry, and there were no obstructions. He said it would not be dangerous for a sober person exercising standard care to approach the bridge and cross it. Photographs introduced into evidence by both sides supported that opinion.

On cross-examination, Thompson said that he could tell from the north end of the bridge that the vehicle had started off the roadway right at the end of the bridge and before it reached the bridge. He said that prior to the accident the vehicle was travel-

ing south and left the roadway to the right side. The sign which was damaged was located 4½ feet north of the bridge. He said that he would not describe the bridge as a dangerous situation and that it was a "traversable roadway." He said there was some fog or mist that evening at the bridge. The speed limit at the scene of the accident was 55.

Coroner Fish testified that he went to the scene, took photographs of Hobbs' body, and later examined it. The cause of death was "accidental drowning." He said the blood alcohol content of Hobbs was .01 percent.

The parties stipulated to the following: "The vehicle of Mr. Garrett was examined and there was nothing to indicate, based on those examinations, that there were any mechanical defects with respect to the steering, 'the tie rods or things that would affect the steerability mechanically'; the inspection took place in December 1989 by inspector Joe Johnson of the Missouri Highway Patrol; the nurse who drew defendant's blood for alcohol testing 'used all the approved methods for drawing blood,' and the 'chain of custody' of the blood was proper."

Chemist Nanneman testified that he had analyzed a sample of defendant's blood obtained during the night of the accident and the blood alcohol content was .24, "over twice the legal limit."

In order for there to be a conviction of a crime, the fact that a crime was committed must be proven. *State v. Howard*, 738 S.W.2d 500, 504 (Mo.App.1987). Corpus delicti is "the body of the offense charged." *State v. Willoby*, 34 S.W.2d 7, 8 (Mo.1930). Extrajudicial statements, admissions or confessions, are both inadmissible and insufficient to sustain a conviction unless there is independent proof, direct or circumstantial, of the essential elements of the corpus delicti. *State v. Charity*, 587 S.W.2d 350, 353 (Mo.App.1979). The corpus delicti cannot be presumed and must be proved by legal evidence sufficient to show that the specific crime charged has actually been committed by someone. *State v. Summers*, 362 S.W.2d 537, 542 (Mo.1962).

Full proof of the corpus delicti independent of defendant's extrajudicial confession is not required. *State v. Reed*, 759 S.W.2d 645, 646 (Mo.App.1988). "On the contrary, what seemed to be only slight corroborating facts have been held sufficient." *State v. McQuinn*, 361 Mo. 631, 235 S.W.2d 396, 397 (1951). If there is evidence of corroborating circumstances which tends to prove the crime and corresponds with circumstances related in defendant's confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved. *Id.* If a confession is made, which enables the state to discover corroborating evidence of the particular crime confessed, the corroborating evidence need not be sufficient, independent of the confession, to establish complete proof that the crime is committed. *State v. Goodwin*, 352 S.W.2d 614, 621 (Mo. banc 1962).

The corroborating evidence may be circumstantial, and if so, the facts and circumstances establishing guilt must be consistent with each other and consistent with the hypothesis of defendant's guilt. The circumstances, however, need not be absolutely conclusive of guilt or demonstrate impossibility of innocence, and the mere existence of other possible hypotheses is not enough to remove the case from the jury. *State v. Fears*, 803 S.W.2d 605, 608 (Mo. banc 1991).

As this court understands defendant's argument under prong (a) of his first point, he seems to say that there was no evidence, other than defendant's statements to the police officers, that defendant, rather than Hobbs, was the driver of the vehicle. Defendant says that the state "failed to demonstrate that [Hobbs] was not the driver."

Defendant told Deputy Ingle that he had been driving the vehicle and had been drinking. Defendant also told Ingle that he wasn't sure how he should be feeling because he had never killed anybody before. Defendant told Trooper Thompson that he was driving and that he didn't know

what happened to cause the vehicle to drive off the roadway. Those statements, coupled with several corroborating facts, were sufficient proof of the corpus delicti. The corroborating facts included the following: The vehicle involved was defendant's 1973 Buick Century; when defendant and Hobbs left the campground, only 100 yards from Patrick's Bridge and no more than 15 minutes before the vehicle was in the river, defendant was driving and the vehicle was headed toward the bridge; defendant's statement to Ingle that the vehicle went to the right when he started crossing the bridge was consistent with the location in the river where the Buick was found; defendant's statement was also consistent with the location of the scrape marks on the right side of the bridge, the marks on the bottom of the vehicle, and the damage to the caution sign at the north end of the bridge.

It was incumbent upon the state to prove beyond a reasonable doubt that defendant was (1) an intoxicated driver who (2) operated a motor vehicle with criminal negligence (3) causing the death of another. *State v. Middaugh*, 802 S.W.2d 570, 572 (Mo.App.1991). To similar effect see *State v. Lewis*, 735 S.W.2d 183, 185 (Mo.App. 1987).

■ As used in § 565.024, "intoxicated condition" means under the influence of alcohol, a controlled substance, or drug, or any combination thereof. Section 565.-002(4). "Operates," as used in § 565.024.-1(2), means physically driving or operating or being in actual physical control of a motor vehicle. Section 565.002(5). "Criminal negligence," as used in § 565.024.1(2), is conduct which amounts to a gross deviation from the standard of care which a reasonable person would exercise in the situation. *State v. Lewis, supra*, 735 S.W.2d at 186. See also *State v. Kliegel*, 674 S.W.2d 64, 67 (Mo.App.1984). Section 577.037 reads, in pertinent part: "1. ... upon the trial of any criminal action ... arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood, ... is admissible in evidence.... If there was ten-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken." "[T]he intoxication presumption contained in § 577.037 applies to an involuntary manslaughter charge under § 565.024.1(2)." *State v. White*, 722 S.W.2d 92, 97 (Mo.App. 1986).

Defendant does not seriously contend that there was a failure of proof with regard to the fact of his intoxication, and the record would not support such a contention. The testimony of the two officers, coupled with the results of the blood sample test, was sufficient. In *State v. Dagley*, 793 S.W.2d 420 (Mo.App.1990), involving a conviction of involuntary manslaughter under § 565.024.1(2), the court said, at 424: "Although intoxication alone does not support a manslaughter conviction, it serves as a factor which the trier of fact, in determining whether criminal negligence exists, may consider in connection with other evidence."

According to the state's evidence, defendant was the driver of the vehicle as it proceeded south approaching Patrick's Bridge. The vehicle struck a caution sign located 4½ feet north of the north end of the bridge and also struck the curb at the north end of the bridge. No skid marks or scuff marks were present on the roadway to indicate that brakes had been applied. The roadway was clear and dry and there were no obstructions. According to Trooper Thompson, there was nothing to prevent someone, exercising ordinary caution or standard care, to approach the bridge and cross it without danger. Photographs supported that opinion. The jury could reasonably infer that defendant's failure to keep the vehicle on the roadway was due to his state of intoxication.

■ In prong (b), defendant asserts that because the state's evidence tended to show that the vehicle, as it approached the bridge, was going only 35 miles per hour in

a zone where the speed limit was 55 miles per hour, defendant did not act with criminal negligence. The jury could properly infer, however, that in view of the degree of defendant's intoxication his operation of the vehicle at any speed involved a substantial and unjustifiable risk of death or personal injury. The mere fact that defendant was not violating the speed limit did not confer upon him immunity for violating other traffic or criminal laws. A person who totally fails to keep a proper lookout while operating a vehicle is not blameless merely because his speed is under the limit. A person who travels at a speed greatly in excess of the speed limit is not blameless merely because he keeps a proper lookout.

This court holds that the evidence was sufficient to support the verdict. Defendant's first point has no merit.

■■■■■ Defendant's second point is that the trial court erred in failing to disqualify the Ozark County prosecutor's office from representing the state in this case "on the grounds of conflict of interest," in violation of defendant's constitutional right to due process, "in that defendant's former public defender, Charles Brown, with whom defendant discussed all facets of his case, became the prosecutor in Ozark County."

For independent reasons, as the excellent brief of the state points out, this point has no merit. The point was not raised in defendant's motion for new trial. Accordingly, it has not been preserved for appellate review. Rule 29.11(d). *State v. Martin*, 451 S.W.2d 96, 99[3] (Mo.1970); *State v. Flynn*, 541 S.W.2d 344, 348[8] (Mo.App. 1976). Further, at the outset of the jury trial, the following occurred, outside the presence of the jury:

THE COURT: Another thing, I don't have anything in my record here about that I see where Tom's been appointed as special prosecutor to handle the case so there may be something here but anyway, he's appointed and has been by the court whether there's anything of record or not but I'm now making an oral order appointing him as special prosecutor in the case.

If the defendant has any objection, he can voice it into the record now.

DEFENSE COUNSEL: No objection.

Attorney Brown, who had represented defendant through the entry of his plea of not guilty, was appointed prosecuting attorney during the course of the proceeding. At that point he withdrew from representing defendant and, of course, did not participate in the jury trial. This court has examined the record for plain error, and no such error appears.

The judgment is affirmed.

### No. 17607

■■■■ Movant filed a pro se motion under Rule 29.15, seeking post-conviction relief. Thereafter, movant's post-conviction counsel filed an amended motion under Rule 29.15. The amended motion was not verified. The trial court held an evidentiary hearing and entered findings and conclusions on the claims contained in both motions and denied both motions.

Movant's sole point is that the trial court erred in failing to conduct a hearing to determine whether movant was abandoned by post-conviction counsel in that the amended motion was unverified and the trial court was deprived of jurisdiction to consider the claims in the amended motion.

Movant does not challenge any of the findings or conclusions of the trial court with respect to the amended motion. It received the same treatment it would have received if it had been verified. The lack of verification, under the circumstances here, does not require remand. *See Pollard v. State*, 807 S.W.2d 498, 502[7] (Mo. banc 1991).

The judgment is affirmed.

SHRUM, P.J., and MAUS, J., concur.