STATE of Missouri, Plaintiff–Respondent,

v.

Kenneth MILLS, Defendant–Appellant.

Kenneth MILLS, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

Nos. 17730, 18796.

Missouri Court of Appeals, Southern District, Division One.

March 24, 1994.

---

Emmett D. Queener, Office of the State Public Defender, Columbia, for defendant-movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

SHRUM, Judge.

Kenneth Mills (the defendant) was convicted by a jury of attempted forcible rape (Count I), § 566.030, RSMo Supp.1991, and two counts of sodomy (Counts II and III), § 566.060, RSMo Supp.1991. He was sentenced to 10 years' imprisonment on each charge.[1] In Case No. 17730 he appeals from the judgment imposing the sentences.

The defendant first avers that the trial court erred when it allowed the state to file an amended information the morning of trial. In Point II he charges that the trial court committed prejudicial error when it permitted the prosecutor to argue punishment in the second part of the closing argument without mentioning that subject in the initial part of it. We affirm.

After sentencing, Mills (the movant) filed a *pro se* Rule 29.15 motion seeking postconviction relief. The movant's *pro se* motion was amended by his appointed postconviction counsel. The movant's request for postconviction relief was denied without an evidentiary hearing. In Case No. 18796 he appeals from that denial. We affirm.

Pursuant to Rule 29.15(*l*) the appeals were consolidated.

## CASE NO. 17730—DIRECT APPEAL

The sufficiency of the evidence to sustain the defendant's convictions is not in dispute.

V_A_B_, the victim, was age 15 at the time of trial.[2] In March 1986 she and her mother moved to Caruthersville, Missouri. The defendant was cohabiting with the victim's mother at the time. He continued to live in their home until late September or early October 1987.

At trial V_A_B_ testified that while living at Caruthersville, the defendant made her have oral sex with him by "sticking [her] mouth on his penis" and by placing "his tongue in [her] clitoris." In another incident, as V_A_B_ was taking a bath, the defendant stuck his fingers in her anus, rolled her over, and then tried to stick his penis into her anus.

Initially V_A_B_ kept quiet about the abuse because of the defendant's threats and because of her concern that she would be taken from her mother if she told anyone about his acts. During the third week of September 1987, while they were alone at home, the defendant forcibly attempted to put his penis in V_A_B_'s vagina. The next day the victim finally told her mother what the defendant had been doing. The mother immediately confronted the defendant with the accusations. He denied them. Nonetheless, he moved when the victim's mother insisted he do so.

Because of her fear of the defendant and her concern that her children might be removed from her custody, the mother did not initially report the crimes to law enforcement officials. She first told authorities about the incidents in 1991. She did so following a telephone conversation in January 1991 with the defendant in which he, for the first time, admitted to the mother that V_A_B_'s accusations were true.

At trial the defendant denied ever sexually molesting the victim. He further testified as follows. The victim's mother had threatened "several times" to report him for sexual abuse of V_A_B_. The accusations were usually made when he was separating from the victim's mother. In September 1987, he moved away because he found that a drug dealer was coming to his home while he was gone. After leaving in September 1987, the victim's mother "demanded" that he return saying that if he did not do so, she would accuse him of molesting V_A_B_. He returned for a short while but then left again and never resumed living with the victim's mother. He denied admitting to the victim's mother in the January 1991 telephone conversation that he had sexually molested V_A_B_. Rather, he insisted that the victim's mother again asked that he return to live with her, an offer he declined.

---

1. The trial court ordered the 10-year term in Count II to run consecutively with that imposed in Count I. It ordered the 10-year term in Count III to run concurrently with that imposed in Count II and consecutively with the sentence imposed in Count I.

2. The case was tried June 19, 1991.

■ For his first point the defendant contends that the trial court erred in allowing the state to file an amended information the morning of trial, June 19, 1991. The amendment took the following form. Originally the state charged that the defendant committed all three offenses "during the period ... March 1, 1986 through ... September 1, 1987." The state amended the information to change the date of the attempted rape to "on or about the month of September, 1987" and the date of the sodomy offenses to "March 1, 1986 through and including *September 30, 1987.*" (Our emphasis.)

In his argument the defendant points to the fact that two days before trial he filed a motion for a bill of particulars. On the day before trial the court ruled the motion, saying: "I'm limiting the State to ... the allegation that these offenses occurred ... on or between ... March 1, '86, through September 1 of '87." With that background, the defendant insists that the trial court committed prejudicial error by then allowing the state to amend the information so as "to expand the time period during which [he] could be convicted." The defendant says that under the circumstances the amendment "surprised" him and denied him "the opportunity to prepare a defense."

■ Under Rule 23.04 a trial court has discretion to direct or permit the filing of a bill of particulars. *State v. Davis,* 685 S.W.2d 907, 913[14] (Mo.App.1984). Denial of a motion for a bill of particulars will not be *disturbed* unless an abuse of discretion is shown. *State v. Cox,* 352 S.W.2d 665, 672[17] (Mo.1961); *State v. Feeler,* 634 S.W.2d 484, 486[4] (Mo.App.1981). In reviewing a trial court's ruling for abuse in this regard we know that "[t]he function of such a bill is limited to that of informing the defendant of the particulars of the offense *sufficiently to prepare his defense.*" *State v. Anderson,* 384 S.W.2d 591, 598[2] (Mo. banc 1964) (emphasis in original).

Rule 23.08 authorizes the amendment of an information "[a]t any time ... if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." Under this rule the test of prejudice is "whether a defense under the charge as originally made would be equally available after the amendment and whether defendant's evidence would be equally applicable after as well as before the amendment." *State v. Taylor,* 375 S.W.2d 58, 63[10] (Mo.1964). *See also State v. Ruth,* 830 S.W.2d 24, 26[3] (Mo.App.1992).

■ The defendant does not contend that the amended information charged him with a new offense nor does he explain or expound upon his bald assertion that the amendment denied him the opportunity to prepare a defense. As the defendant acknowledges, time is not of the essence in sex offense cases. *State v. Gardner,* 849 S.W.2d 602, 605[4] (Mo.App.1993); *State v. Ellis,* 820 S.W.2d 699, 701[1] (Mo.App.1991). In such cases the state is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed on any day before the date of the information and within the period of limitation. *Gardner,* 849 S.W.2d at 605[4].

Neither at trial nor before this court does the defendant present an alibi defense. The defendant testified that he had lived in the same household as the victim when she claimed the offenses occurred, but denied that he attempted to rape her and denies that he sodomized V_A_B_. He insisted that the victim's mother had often accused him falsely of abusing V_A_B_, usually when he was threatening to leave. Obviously he was hoping that the jury would infer from his testimony that there was a motive for the victim and her mother to make false accusations. The defense thus raised by the defendant to the charges as originally made was equally available after the amendment and the defendant's evidence was equally applicable after and also before the amendment. Under the circumstances the defendant has failed to meet his affirmative burden of showing that he was prejudiced by the amendment to the information on the day of trial. *See Ruth,* 830 S.W.2d at 26[3]; *State v. Simmons,* 825 S.W.2d 361, 365[10] (Mo.App. 1992). The trial court did not err in allowing the challenged amendment to the information. *Gardner,* 849 S.W.2d at 605[5]; *State v. Crossland,* 820 S.W.2d 72, 77[6] (Mo.App. 1991); *Ellis,* 820 S.W.2d at 701; *State v.*

*White,* 674 S.W.2d 551, 553–554[3] (Mo.App. 1984). Point I denied.

■ For his second point, the defendant contends that the trial court abused its discretion in overruling his objection to the prosecutor's final argument where he claims the subject of punishment was mentioned for the first time. The following are details of the closing arguments that are pertinent.

In the initial part of his closing argument the prosecutor told the jury:

"Rape is an extremely cruel crime because it not only violates the body, but it also violates the spirit. A home should be a haven of safe refuge for a child, it should not be a harbor for sexual abuse, as it was for [the victim]."

In his closing statement defense counsel did not mention punishment.

In the second portion of the state's closing argument the prosecutor went over the verdict forms with the jury, during which the following occurred:

"MR. HAZEL [prosecutor]: And then write in the amount of punishment [on the verdict forms] that you think he deserves in this case.

MR. PAULSON [defense counsel]: Objection, Your Honor. May I approach?

THE COURT: Yes.

(Reporter's Note: Mr. Paulson approached the Bench and conferred with the Court off the record.)

MR. HAZEL: As I was saying, write in the punishment that you think is appropriate.

Your decision today will set the standard in our community ... the price that child molesters, people who sexually—

MR. PAULSON: I would object, Your honor, he's arguing the amount of punishment.

THE COURT: Overruled.

MR. HAZEL: —that sexually abused children have to pay if they get caught. . . . Your verdict and your sentence will set that standard, please do not make it light."

As the jury retired, defense counsel requested a mistrial, claiming that the prosecutor's remarks amounted to a prohibited argu-

ment of the amount of punishment. He also asked that the jury be instructed to disregard any argument concerning punishment. Both requests were denied by the trial court.

Although case authority on this subject is extensive, it is not easily reconciled nor can it be reduced to a single statement of principle. *State v. Burton,* 721 S.W.2d 58, 64 (Mo.App. 1986). "In general, the rule is that if a prosecutor intends to argue punishment to the jury, it must be discussed in the opening portion of the state's argument in order that defense counsel will have the opportunity to answer the argument." *Id.* (citing *State v. Maxie,* 513 S.W.2d 338, 345[17] (Mo.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975)). *See also State v. Petrik,* 550 S.W.2d 613, 615[1] (Mo.App.1977).

■ This general rule is subject however to the qualification that "a prosecutor is allowed wide latitude in the course of argument which is subject to control upon exercise of the trial court's discretion to determine the impact and prejudice of argument." *Burton,* at 64. Precedents applying this rule are of minor value because of the actual differences among cases. *Burton,* 721 S.W.2d at 64 (citing *State v. Strubberg,* 616 S.W.2d 809, 818 (Mo. banc 1981)). The question of prejudice must be decided in each individual case. *State v. Peterson,* 423 S.W.2d 825, 829 (Mo.1968).

In *State v. Hale,* 371 S.W.2d 249 (Mo. 1963), we find an example of an argument similar to that made here. There, the prosecutor in the first part of his closing argument did not specifically mention the matter of punishment. He did, however, tell the jury that "the circumstances of this case constituted murder in the second degree; that [it] was a serious case and that the type of verdict rendered would be serious not only to the defendant but also to the state. . . ." *Id.* at 255.

In the second part of his closing argument the prosecutor argued that it was an unnecessary killing, asked whether defendant should be freed to go out and commit other crimes, and then began to argue that a slight punishment would encourage others to do the same thing. Defense counsel objected after

the prosecutor argued, " 'When you tap people on the wrist and say, "You have been a naughty boy, don't do that any more"—.' " *Id.* The trial court overruled the objection. The prosecutor then completed the "tap on the wrist" argument saying all parties needed to be treated fairly, nevertheless "this kind of killing" needs to be stopped and defendant should be punished "severely" by conviction of murder in the second degree. He did not ask the jury to fix punishment at any specific number of years. Defense counsel made no further objection after the first objection noted. In rejecting Hale's claim that the state's argument was prejudicial our supreme court said:

> "In his opening argument state's counsel, while not specifically referring to the penalty to be inflicted, did argue that the case was a serious one, and that these circumstances constituted murder in the second degree. Second degree of murder carries with it a minimum penalty of 10 years . . . a matter as to which the jury [was] informed by the instructions. There was, therefore, an oblique or implied reference to the question of penalty in the state's opening argument, which defense counsel had an opportunity to answer. . . . In view of the above references in the state's opening argument; the fact that in the closing argument state's counsel did not urge the jury to inflict any particular number of years' imprisonment . . . and that the only argument objected to (the 'tap on the wrist, naughty boy' argument) was a comparatively mild and dispassionate suggestion, the final argument in this case should not be branded as improper and unfair."

*Id.* at 256[16].

In *Maxie,* 513 S.W.2d at 339, a prosecutor mentioned punishment for the first time in the second portion of his closing argument. Nonetheless, our supreme court determined that because the prosecutor did not urge the jury to impose any particular number of years as a sentence "he was not really 'arguing' for any particular punishment as was the case in *State v. Wadlow,* 450 S.W.2d 200 (Mo.1970), but merely telling the jury that the matter of punishment was for them to determine." *Id.* at 345[16]. The argument was deemed not to have been prejudicial under those facts.

In *Burton,* 721 S.W.2d 58, a prosecutor did not mention punishment in the first part of his closing argument other than to say he would "return" after defense counsel's argument and "discuss punishment." *Id.* at 64. In the second phase of his closing argument, state's counsel argued for "a term of years consistent with the taking of human life and mentioned sentences from three years to life on . . . armed criminal action and ten, twenty and one hundred years or 'whatever you see fit' on the murder charge." *Id.* The *Burton* court found no error in the argument, saying the determinative factor "was the absence of an argument for a particular punishment." 721 S.W.2d at 64. It compared the argument as "much the same" as that made in *Maxie,* namely, "a recitation of the various possible sentences and the comment that the term was for the jury to decide." *Id.* at 64.

On the authority of *Hale, Maxie,* and *Burton,* we conclude that the trial court did not abuse its discretion in denying the defendant's objection to the state's closing argument. In the first part of his closing argument the prosecutor, while not specifically referring to punishment, did argue that "[r]ape is an extremely cruel crime" and that a child's home should not be "a harbor for sexual abuse, as it was for [the victim]." That remark plus the instructions read to the jury just before final arguments commenced, provided "an oblique or implied reference to the question of penalty in the [first portion of] the state's . . . argument, which defense counsel had an opportunity to answer." *See Hale,* 371 S.W.2d at 256[16]. Moreover, the prosecutor's "appropriate punishment" remarks and his "set the standard in community" comments were not argument for a particular punishment, but merely told the jury that the matter of punishment was for them to decide. *Maxie,* 513 S.W.2d at 345. *See Burton,* 721 S.W.2d at 64. We equate the arguments here to those objected to in *Hale,* both being "comparatively mild and dispassionate" suggestions. 371 S.W.2d at 256.

Under the circumstances, we find no abuse of discretion. We are convinced that the

prosecutor's remarks regarding punishment had no adverse effect upon the defendant in the jury's assessment of punishment. Point denied.[3] Judgment affirmed.

## CASE NO. 18796—POSTCONVICTION APPEAL

■■■■ The movant timely filed a *pro se* motion for postconviction relief pursuant to Rule 29.15. In his amended motion,[4] the movant contended that his trial lawyer was ineffective in failing to call two witnesses, Kimberly Sulic, the movant's daughter, and Carl "Bud" Kendrick, Jr.

In his motion the movant alleged that Kendrick would have testified "that [Kendrick] knew movant and [the victim's mother] very well and that [the mother] was not afraid of movant as she testified at trial. That he had seen the two together on numerous occasions and that [the victim's mother] never displayed any fear of movant."

Regarding his daughter, Kimberly Sulic, the movant alleged that she was a classmate of the victim. Continuing, his motion claimed that "Sulic would testify that the two girls were friends and that [the victim] told ... Sulic that [the victim] would get even with movant for moving out from her and her mother."

In Point III the movant challenges the motion court's denial of his Rule 29.15 motion without an evidentiary hearing, arguing the court erroneously concluded he did not suffer ineffective assistance of trial counsel. He contends that his factual allegations concerning the testimony of "Bud" Kendrick and

Kimberly Sulic were not refuted by the record and were allegations that, if proved, would warrant relief.

Our review is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Boyd*, 842 S.W.2d 899, 905 (Mo.App.1992) (citing *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993)). The findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake was made. *Id.* A movant bears the burden of proving ineffective assistance of trial counsel. *Id.*

■■■ To establish claims of ineffective assistance of counsel for failing to call witnesses, a movant has to prove that the testimony of the absent witnesses " 'would have provided a viable defense.' " *State v. Vinson*, 800 S.W.2d 444, 448–49[10] (Mo. banc 1990) (quoting *Hogshooter v. State*, 681 S.W.2d 20, 21[2] (Mo.App.1984)). *See also Boyd*, 842 S.W.2d at 905. "Witnesses who merely impeach the State's witnesses do not provide movant with a defense to a charged crime." *Webster v. State*, 837 S.W.2d 585, 588[3] (Mo. App.1992); *Lane v. State*, 778 S.W.2d 769, 771[1] (Mo.App.1989).

In this case the alleged testimony of both "Bud" Kendrick and Kimberly Sulic would not have provided the movant with a defense, but would merely have been an attempt to impeach the state's witnesses. *See Webster,*

3. We do not ignore cases cited by the defendant. However, of nine cases cited by the defendant, only in *Peterson*, 423 S.W.2d at 836, was prejudicial error found in a prosecutor's final arguments concerning punishment. In *Peterson* our supreme court reaffirmed the propriety of its decision in *Hale*, but pointed to numerous facts that distinguished the two cases. Among others, the following differences were noted: In *Peterson*, at 830, (1) there was "not even an 'oblique' reference to punishment in the State's opening argument"; (2) the prosecutor recommended "a specific number of years namely, ten, which was the maximum permitted;" and (3) specific objections were made at the first opportunity. The prosecutor's closing argument remarks in the instant case track those in *Hale*, not those in *Peterson*.

4. The movant's amended motion was not verified. Nonetheless, the movant urges that we review the postconviction issue he raises "because the motion court considered the allegations of the amended motion and ruled on the merits of the claims raised therein." *See State v. Garrett*, 829 S.W.2d 622 (Mo.App.1992); *State v. Jackson*, 822 S.W.2d 952 (Mo.App.1992). We agree. "Even if the amended motion had been verified, that would not have affected the result. The lack of verification, under the circumstances here, does not require remand." *Jackson*, 822 S.W.2d at 958 (citing *Pollard v. State*, 807 S.W.2d 498, 502[7] (Mo. banc), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991)).

837 S.W.2d at 588[3]. After a thorough review of the record, we do not have a definite and firm impression that a mistake was made by the motion court in denying the movant's request for postconviction relief. The motion court's conclusions are not clearly erroneous. Point III is denied.

PARRISH, C.J., concurs in result with separate opinion filed.

MONTGOMERY, J., concurs.

PARRISH, Chief Judge, concurring.

I concur in the result reached with respect to each point defendant raises on appeal. I agree with the principal opinion's discussion regarding Points I and III. I agree with all aspects of the principal opinion's discussion of Point II other than the conclusion that the prosecuting attorney obliquely or impliedly referred to punishment in the opening segment of the state's closing argument.

The principal opinion concludes that the prosecuting attorney's argument "that '[r]ape is an extremely cruel crime' and that a child's home should not be 'a harbor for sexual abuse, as it was for [the victim]'" was an oblique or implied reference to punishment and equates those references to the argument in *State v. Hale*, 371 S.W.2d 249, 255–56 (Mo.1963). I do not agree.

In *Hale* the jury was told in the prosecuting attorney's opening segment of the state's closing argument that the case being tried was serious; "that the type of verdict rendered would be serious not only to the defendant but also to the state." *Id.* at 255. In *Hale* the prosecuting attorney referred to the verdict. A verdict in a criminal case in which the jury recommends punishment includes a finding regarding guilt and, if that finding is guilty, the jury's assessment of punishment. Thus, in *Hale*, by referring to the verdict, the prosecuting attorney obliquely or impliedly referred to punishment.

In this case, the prosecuting attorney did not refer to the verdict. He referred only to the serious nature of the offense. I do not believe the prosecuting attorney referred to punishment in the opening segment of the state's closing argument in any respect.

Nevertheless, as the principal opinion points out, in the final segment of the state's closing argument in this case, the prosecuting attorney did not ask the jury to assess a particular punishment. The prosecuting attorney did not argue for a particular punishment. The prosecuting attorney told the jury that punishment was for them to decide. I believe that was proper; that it did not violate the requirement that if the state plans to argue punishment to the jury, the prosecuting attorney must discuss punishment in the opening segment of closing argument. I agree that defendant's second point must be denied.